F I L E D
United States Court of Appeals
Tenth Circuit

NOV 3 1997

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

KENNETH H. WINCHELL,

　　　　Defendant - Appellant.

No. 96-1513

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 96-CR-50-D)**

---

Charles Szekely, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender with him on the briefs), Denver, Colorado, for appellant.

Meghan S. Skelton (Robert E. Lindsay and Alan Hechtkopf with her on the brief), Tax Division, Department of Justice, Washington, D.C., for appellee.

---

Before **ANDERSON, HENRY**, and **BRISCOE**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Kenneth Harlan Winchell appeals his jury conviction on six counts of willfully filing false income tax forms in violation of 26 U.S.C. § 7206(1), and on one count of corruptly obstructing and impeding the administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a). He contends that the district court erred in refusing to instruct the jury regarding specific intent under § 7206(1), and, alternatively, that the evidence was insufficient to support his conviction on the six counts related to that section. Additionally, he contends that the evidence was insufficient to establish that he acted corruptly within the meaning of § 7212(a). We affirm.

## I. BACKGROUND

The relevant facts are undisputed. In 1983 the Internal Revenue Service ("IRS") obtained a judgment against Winchell for unpaid taxes for the year 1975. Subsequently, the IRS attempted to collect the judgment by garnishing Winchell's Marine Corps and social security retirement payments and by filing liens against property he owned in Park County, Colorado. However, through a clerical error, the IRS released its lien against the Park County property.[1]

--------

[1]In 1987, the lessee of the property, who had obtained a default judgment against Winchell for breaching the lease, purchased the property at a sheriff's sale conducted to foreclose his judgment lien. Two years later, in 1989, that lessee-purchaser sold to a third party. Thereupon, the IRS filed an action to foreclose its allegedly superior lien. See

(continued...)

After the IRS obtained its judgment and attempted collection, Winchell wrote numerous letters to the IRS in which he disputed its jurisdiction and its legal standing, and in which he stated that he was not a person subject to taxes. R. Vol. VI at 185, 226-27, 232-33. Except for the 1989 return at issue in this case, Winchell filed no tax returns after 1977.[2] Id. at 185. Finally, in 1990 Winchell sent "Notice of Bills Due" to IRS and governmental employees involved in his case and also to various individuals who had been involved in the foreclosure of his Park County property. These notices charged that the recipients owed Winchell substantial sums of money, and warned that failure to "pay or otherwise satisfy this bill . . . may result in loss of your property or garnishment, etc., of your wages/salary . . . to satisfy this lien."[3] See, e.g., R. Vol. VI at 186. Winchell also sent numerous false Forms 1099 ("1099s") to those individuals. Winchell then filed the original 1099s along with the accompanying Forms 1096

---

[1](...continued)
generally R. Vol. VI at 151-154. However, the federal district judge concluded that the IRS had released its lien and, consequently, no longer held any interest in the property. See United States v. Winchell, 793 F. Supp. 994 (D. Colo. 1992). Had the IRS prevailed, the proceeds of the second sale would have fully satisfied its judgment against Winchell.

[2]Two persons involved in business dealings with Winchell also testified that Winchell was using off-shore trusts, aliases, and partnerships to hold various properties after the IRS obtained its judgment. R. Vol. VI at 132-33, 147, 151-53, 250-52.

[3]Apparently Winchell did not actually file liens or attempt to garnish any wages after he sent these mailings. However, one of the IRS recipients testified that he was attempting to purchase a house at the time, and he was concerned because Winchell had previously filed false liens against others. R. Vol. VI at 182, 189.

(1096s) with the IRS. The 1096s reported payments of several billion dollars on almost two hundred 1099s. Appellant's Br. at 5-6. In fact, Winchell had never paid those sums.

Winchell also filed an income tax return for 1989 in which he stated that he earned over $7.5 billion and had paid $7.5 billion in withholding taxes. Thus, he indicated a refund due of almost $5.5 billion. Id. at 6. Again, Winchell had neither earned nor paid in the stated sums. Furthermore, in addition to sending a false 1099, Winchell sent one of the IRS employees involved in his case a letter stating that he "was going to rearrange [the employee's] face," R. Vol. VI at 186, and he sent another a letter which stated, "I strongly suggest you very seriously contemplate in your mind before you proceed one step further in your unlawful action against me. . . . I am coming after you, Linda, and the other IRS scumbags who have been stealing my money . . . . This is known as treason and you all will pay the price."[4] Id. at 227-28.

Generally, the individuals who received the false 1099s contacted the IRS or other appropriate authorities. R. Vol. V at 35, 52, 70, 80, 93, 107; R. Vol. VI

_____

[4]We note that Winchell apparently wrote the letter to "Linda" after he filed the false tax forms. Nonetheless, defense counsel requested that it be read in full for the jury. R. Vol. VI at 227. Throughout the trial, defense counsel contended that events through mid-1992, when the IRS lost its foreclosure action, were relevant as "part and parcel of the entire presentation," and "showing the context within which it happened." Id. at 123, 126; see supra note 1.

at 162-63, 187-88, 221.  Consequently, the IRS assigned five agents and three tax examiners to manually locate any false forms which Winchell might have submitted to the IRS to assure that the recipients would not be sent the standard discrepancy inquiry.  R. Vol. V at 11-12, 36.  The search took about one week to complete.  Id. at 12.  The IRS neither issued any refund nor audited any individuals as a result of Winchell's filings.

## II.  DISCUSSION

### A.    SPECIFIC INTENT UNDER 26 U.S.C. § 7206(1) – JURY INSTRUCTION

The district court's instructions set forth the four elements which the government was required to prove in order to establish a violation of 26 U.S.C. § 7206(1):

> One:  The defendant made and subscribed a return;
>
> Two:  The return contained a written declaration that it was being signed subject to the penalties of perjury;
>
> Three:  The defendant did not believe the return to be true and correct as to every material matter detailed in the indictment; and
>
> Four:  In filing the false tax return, the defendant acted willfully.[5]

___

[5]Winchell stipulated to the proof of elements one and two.  R. Vol. V. at 292-294.

R. Vol. I, Tab 8, Instruction No. 21.  Additionally, the court further instructed the jury that "[t]o act 'willfully' means to voluntarily and intentionally violate a known legal duty," and that "[n]egligent conduct is not sufficient to constitute willfulness."  Id., Instruction No. 22.

Although Winchell ultimately accepted the above two instructions, R. Vol. VI at 289-90, he argued that he was also entitled to a separate instruction on "specific intent."  Id. at 300-05.  On appeal Winchell contends that the district court erred in refusing to instruct the jury that the government must prove that he possessed the "specific intent" to violate 26 U.S.C. § 7206(1).[6]

We review de novo a timely challenge to a jury instruction to determine whether, considering the instructions as a whole, the jury was misled.  United

---

[6]Winchell tendered the following instruction:

The crimes charges [sic] in counts II through VII are serious crimes which require proof of specific intent before the Defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act.  To establish specific intent the Government must prove that the Defendant . . . knowingly did an act which the law forbids, purposely intending to violate the law.  Such intent may be determined from all the facts and circumstances surrounding the case.  Accordingly, it is not enough if the Government establishes, beyond a reasonable doubt, that the income tax return was false in some material matter.  In order to convict the Defendant . . . you must find beyond a reasonable doubt, that he subscribed to a return, knowing the same to be false in a material respect, and did so purposely intending to violate the income tax law regarding false statements on a return.  Unless you so find beyond a reasonable doubt, you must acquit.

R. Vol. I., Tab 3, Defendant's Proposed Jury Instruction No. 5.

States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994).  If, as a whole, the instructions correctly state the law and provide the jury with an "intelligent, meaningful understanding of the applicable issues and standards," we will not reverse.  United States v. Laughlin, 26 F.3d 1523, 1528 (10th Cir. 1994).  In other words, reversal is not appropriate unless we have "substantial doubt that the jury was fairly guided."  United States v. Mullins, 4 F.3d 898, 900 (10th Cir. 1993).

In the context of criminal violations of federal tax statutes, the Supreme Court has recognized the "pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well meaning, but easily confused, mass of taxpayers."  United States v. Bishop, 412 U.S. 346, 360 (1973).  Thus, as applied in the Internal Revenue Code, the Supreme Court has "consistent[ly] interpret[ed] the word 'willfully' to require an element of *mens rea.*"  Id.  Defining that *mens rea*, the Supreme Court has explained, for purposes of establishing violations of tax laws, its cases "conclusively establish that the standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'"[7]  Cheek v. United States, 498 U.S. 192, 201 (1991) (quoting Bishop, 412 U.S. at 361, and United States v. Pomponio, 429 U.S. 10, 12 (1976) (per curiam)).

---

[7]As we observed in United States v. Hollis, 971 F.2d 1441, 1451 (10th Cir. 1992), this definition of willfulness, which differs from that term's traditional connotation, has been imposed only in limited contexts.

Accordingly, Winchell is correct insofar as he asserts that § 7206(1) establishes a "specific intent" crime. See United States v. Erickson, 676 F.2d 408, 410 n.4 (10th Cir. 1982) (listing § 7206, among other Internal Revenue Code sections, and stating that "[a]ll of these statutory provisions are specific intent crimes, *i.e.*, willfulness is an element of each"). However, as we have previously noted, "instructing in terms of 'specific intent' has been disfavored by the courts because of the confusing and ambiguous nature of such an instruction." Laughlin, 26 F.3d at 1527 (citing Liparota v. United States, 471 U.S. 419, 433 n.16 (1985)[8]). Instead, we have endorsed instructions which adequately "apprise the jury of the *mens rea* element of the offense," id. at 1527, and which "define each element of the offense clearly and accurately." Id. at 1528. In this case, the word "willfully" describes the requisite *mens rea*. Accordingly, the court adequately instructed the jury when it defined "willfully" using the conclusively established standard, and we find no error in its refusal to give a separate specific intent instruction.

---

[8]In Liparota, the defendant proffered an instruction identical to the first four sentences of the instruction which Winchell proffered. Compare supra note 6, with Liparota v. United States, 471 U.S. 419, 422 n.3 (1985). Referring to that instruction, the Court observed that a "more useful instruction might relate specifically to the mental state required under [the statute at issue] and eschew use of difficult legal concepts like 'specific intent' and 'general intent.'" Liparota, 471 U.S. at 433 n. 16 (1985).

## B.    SUFFICIENCY OF THE EVIDENCE

Winchell further contends that, as to all counts, the evidence was insufficient to support his conviction.  Whether the evidence is sufficient to support a conviction is a question of law which we review de novo.  United States v. Dashney, 117 F.3d 1197, 1202 (10th Cir. 1997).  Viewing the record in the light most favorable to the government, we must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  In answering this question, we may neither weigh conflicting evidence nor consider the credibility of  witnesses."  United States v. Johnson, 120 F.3d 1107, 1108 (10th Cir. 1997) (citations and internal quotations omitted).

### 1.    26 U.S.C. § 7206(1) – Requirements of Willfulness and Materiality

In order to establish a violation of 26 U.S.C. § 7206(1), the government had to prove that Winchell did not believe that the return which he signed under penalty of perjury was true and correct as to every material matter, and it also had to prove that Winchell acted willfully.  See United States v. Owen, 15 F.3d 1528, 1532 (10th Cir. 1994).  Winchell contends that, even if the district court did not err in its instructions, the evidence was insufficient to prove either the willfulness or the materiality elements of the offense.

### a. Willfulness

"Willfulness, as construed by [Supreme Court] decisions in criminal tax cases, requires the government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."[9] Cheek, 498 U.S. at 201.

In this case, Winchell does not argue that he did not know the relevant tax law, or that he otherwise had a good faith misunderstanding of the duties it imposed. Rather, Winchell argues simply that "[t]he government failed to introduce any evidence that [he] intended his scheme to have adverse consequences for anyone, including himself, or that he acted with the purpose of violating the law." Appellant's Br. at 22. We disagree. Our review of the record reveals ample evidence that Winchell desired to make the victims of his filings "pay the price" for "stealing" his money. Moreover, the evidence clearly shows that he never paid any of the sums he claimed on the false forms.

"[A] jury is permitted to draw inferences of subjective intent from a defendant's objective acts." Wingfield v. Massie, 122 F.3d 1329, ___, 1997 WL 471125, at *5 (10th Cir. 1997) (citing 1 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 3.5 at 316-17 (1986)). Additionally, a jury is also

---

[9]With regard to our preceding discussion in section II.A., supra, we observe that an instruction on willfulness which incorporates this more fully elaborated statement from Cheek would also be acceptable.

"permitted to find that a defendant intends those consequences which he announces a desire to accomplish." Id. at *5. Viewing the evidence in the light most favorable to the government, we conclude that the jury could reasonably conclude that Winchell voluntarily and intentionally violated the law when he filed the false documents, and thus acted willfully.[10]

### b. Materiality

Winchell also contends that his false statements were not material. As we have recently stated, information is material under § 7206(1) if it is "necessary 'in order that the taxpayer . . . compute his tax correctly.'" United States v. Clifton, No. 96-5018, ___ F.3d ___, slip op. at 3 (10th Cir. Oct. 17, 1997) (quoting United States v. Strand, 617 F.2d 571, 574 (10th Cir. 1980) (internal citations and quotations omitted)); accord United States v. Uchimura, No. 94-10579, ___ F.3d ___, 1997 WL 573130, at *3 (9th Cir. Sept. 17, 1997); United States v. Klausner, 80 F.3d 55, 60 (2d Cir. 1996).

Nonetheless, Winchell argues that, in this case, his filings were not material since they were "objectively incapable of influencing the IRS because of [his]

---

[10]We are unconvinced by Winchell's argument that, at most, the evidence merely indicates an intent to "annoy" his victims. Even if annoyance were his primary intent, a reasonable juror could have concluded that his means of accomplishing the desired end necessarily involved an intentional violation of the law.

well-known tax protestor status and the preposterous monetary figures provided."[11] Appellant's Br. at 18. In other words, Winchell argues that he is not liable for his false statements because of their patent absurdity. We have previously rejected such arguments. "The large amounts involved do not reduce the forms to scraps of blank paper. If anything, the reverse is the case. They cry out for attention and it would be blameworthy administration to ignore them." United States v. Parsons, 967 F.2d 452, 455 (10th Cir. 1992) (applying the analogous provision of 18 U.S.C. § 1001);[12] see also United States v. Meuli, 8 F.3d 1481, 1485 (10th Cir. 1993) (also applying 18 U.S.C. § 1001 – "to simply accept Defendant's argument would turn § 1001 on its head – *i.e.* Defendant would be ultimately relieved from liability for making a false statement because of the falsity itself").

---

[11]In making this argument, Winchell utilizes our definition of materiality in the analogous context of 18 U.S.C. § 1001, which prohibits the knowing and willful making of a false statement regarding a material fact that is within the jurisdiction of a federal agency. In that context, we have stated that a "'false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the tribunal in making a determination required to be made.'" United States v. Meuli, 8 F.3d 1481, 1485 (10th Cir. 1993) (quoting United States v. Brittain, 931 F.2d 1413, 1415 (10th Cir. 1991)).

[12]Parsons concerned the filing of false income tax forms, although the case was brought pursuant to 18 U.S.C. § 1001. See supra note 11. Applying that section to our evaluation of the materiality of the false statements, we held that the "determination required to be made . . . [is] whether the forms depict[] truth." United States v. Parsons, 967 F.2d 452, 455 (10th Cir. 1992). In any event, Winchell attempts to factually distinguish Parsons by noting that those false statements involved only $55 million, whereas his case involved billions. We are not persuaded.

In this case, Winchell's false statements concerned income. Moreover, the IRS was forced to implement special procedures to intercept the false filings. Accordingly, viewing the record in the light most favorable to the government, we conclude that a reasonable juror could have found that Winchell's false statements concerned a matter necessary to the correct computation of taxes owed, and that the statements also had a natural tendency to influence, or were capable of influencing, required IRS decisions and determinations.

## 2. 26 U.S.C. § 7212(a) – Requirement that a Defendant Act Corruptly

In order to establish a violation of 26 U.S.C. § 7212(a), the government must prove that a defendant "corruptly" endeavored to obstruct and impede the due administration of the internal revenue laws. As used in this section, to act corruptly means to act with the intent to secure an unlawful benefit either for oneself or for another. See United States v. Valenti, 121 F.3d 327, 331 (7th Cir. 1997); United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997); United States v. Workinger, 90 F.3d 1409, 1414 (9th Cir. 1996); United States v. Reeves, 752 F.2d 995, 998 (5th Cir. 1985) ("Reeves I"); cf. United States v. Ogle, 613 F.2d 233, 238 (10th Cir. 1979) (quoting Bouvier's Law Dictionary and noting, in the context of 18 U.S.C. § 1503, that "corruptly" ordinarily describes "an act done with an intent to give some advantage inconsistent with official duty and the

-13-

rights of others"). Moreover, a taxpayer's filing of frivolous documents against IRS agents constitutes a corrupt endeavor if the taxpayer "meant to . . . intimidate officers or agents of the [IRS] from collecting his just debt of taxes due." Reeves I, 752 F.2d at 1002; see also United States v. Reeves, 782 F.2d 1323, 1326 (5th Cir. 1986) ("Reeves II").

On appeal Winchell contends that the evidence was insufficient to support a conviction because there was no evidence that he sought to secure a "financial gain." Winchell contends that, at best, the evidence indicates that he attempted merely to annoy the recipients of his mailings, Appellant's Br. at 15, and that the sums he claimed were so preposterous as to "negate[] any rational conclusion that he actually expected to achieve any financial benefit." Appellant's Reply Br. at 5. Additionally, Winchell contends that because he did not testify, there is no evidence of his actual intent. Appellant's Br. at 16. In response, the government points out that two of the IRS employees who received his mailings testified they felt threatened and harassed, and, moreover, the evidence demonstrates that the false mailings actually did drain IRS resources. The government further emphasizes the refund Winchell sought on his false income tax return.

The fact that the taxpayer may claim sums which are rationally "preposterous" does not obviate a corrupt intent. See, e.g., United States v. Kuball, 976 F.2d 529, 530-31 (9th Cir. 1992); United States v. Yagow, 953 F.2d

-14-

423, 425-27 (8th Cir. 1992). Moreover, as we have already noted, a "jury is permitted to draw inferences of subjective intent from a defendant's objective acts." Wingfield, 122 F.3d at \_\_\_, 1997 WL 471125, at *5.

In this case, the evidence shows that, in addition to filing a false tax return seeking a refund, Winchell mailed false bills and false IRS forms to the IRS and its employees, and he sent letters which accused the employees of stealing his money and which otherwise threatened them. Taking the evidence in the light most favorable to the government, a juror could reasonably infer that Winchell sought to secure an unlawful advantage or benefit. See Reeves II, 782 F.2d at 1326. Accordingly, we conclude that Winchell's conviction for corruptly endeavoring to impede the due administration of the internal revenue laws is supported by sufficient evidence.

Therefore, for the reasons stated, we AFFIRM the judgment of the district court.