**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LAURENCE EUSTELLE WOLFF,

    Defendant-Appellant.

No. 09-8034

(D.C. No. 2:08-CR-00220-ABJ-1)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK,** and **TYMKOVICH**, Circuit Judges.[**]

Defendant Laurence Eustelle Wolff appeals his convictions on three counts of mailing threatening communications in violation of 18 U.S.C. § 876(c) and two counts of interfering with the administration of Internal Revenue laws in violation of 26 U.S.C. § 7212(a). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Defendant admits he has refused to pay federal income taxes since 1988.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G) The case is therefore ordered submitted without oral argument.

Since 1996, the Internal Revenue Service (IRS) has tried to collect these unpaid taxes from Defendant, but to no avail. The IRS, consequently, referred the matter to the Department of Justice. Assistant United States Attorney Carol Statkus filed a civil lawsuit in 2007 in federal district court in Wyoming before Chief Judge William Downes to foreclose on Defendant's property in order to partially satisfy his tax debt. In 2008, Chief Judge Downes ordered the foreclosure and sale of Defendant's real property—his residence in Wyoming—to satisfy the tax lien. The order compelled Defendant to vacate the residence within thirty days.

In response, Defendant mailed a sixteen page letter entitled a "Brief Expose on the Fraud of the Internal Revenue Service" with eleven pages of attachments to 240 individuals, including Chief Judge William Downes, AUSA Statkus, Fred Bass (an IRS officer assigned to Defendant's tax collection matter), and Sheriff William Pownall of Campbell County, Wyoming. Defendant admits in the letter he has not filed a tax return with the IRS since 1987, describes his resulting interaction with the IRS from his perspective, and acknowledges he has been ordered to vacate his residence. Additionally, he writes in his twenty-seven page mailing:

> I will defend my rights and the property with all that I have, for I will not give in to the FRAUD and the crimes of these people. I am demanding the Sheriff of Campbell county to come to my aid and arrest these criminals, but he may also be one of them. In which case, this will be a standoff at the property in question, and which I will give my life if need be, but which I will take any that will try to come against me, which again is justified and has been proven many times in the courts.

***

Come the 19th of August, we will all know for this is the day I am to be gone from the premises along with all of my belongings. This I WILL not do, nor WILL I go to jail for defending my rights and the Truth, even if it means my death.

&ast;&ast;&ast;

Charges are being prepared and will be filed against these individuals [Philip Blondin (attorney with the Tax Division of the Department of Justice), AUSA Statkus, John Green (Acting United States Attorney), Chief Judge William Downes, and William Beaman (United States Magistrate Judge)] for the crimes as listed herein, but are not limited to only these, if I am not eliminated (killed or murdered or imprisoned, which they may think) either by them or their co-conspirators.

&ast;&ast;&ast;

Any Officer, or other person at the direction of any Officer . . . who attempts to enter these premises without a proper Warrant or Judgment . . . will be treated as any other trespasser or lawless intruder would be when attempting to break and enter an inhabited dwelling when warned not to do so. SURVIVORS WILL BE PROSECUTED.

Members of the Campbell County Sheriff's Office arrested Defendant at a local restaurant as he got into his car in August 2008. The officers recovered a loaded handgun and additional ammunition. Law enforcement then secured Defendant's residence. Once inside, the officers discovered six loaded firearms and additional ammunition in various places within a bedroom.

Subsequently, a federal grand jury returned a six count indictment against Defendant. Counts one and two charged Defendant with misdemeanor violations of 26 U.S.C. § 7212(a) for endeavoring to interfere with the administration of Internal Revenue laws. Counts three through six charged Defendant with felony violations of 18 U.S.C. § 876(c) for mailing threatening communications. After a three-day trial, a jury convicted Defendant on all counts. The presiding judge thereafter

3

sentenced him to twenty-seven months' imprisonment and three years' supervised release.  Defendant's timely notice of appeal of counts two through six followed.

## II.

Defendant asserts the district court improperly denied his motion for judgment of acquittal and erroneously submitted to the jury the issue of whether he communicated a "true threat."[1]  We review the denial of a "motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government."  United States v. Burkley, 513 F.3d 1183, 1190 (10th Cir. 2008).  In this process, we "review the trial record to determine if there is evidence to support the verdict" but we do not "weigh the evidence or consider the credibility of the witnesses."  United States v. Austin, 231 F.3d 1278, 1283 (10th Cir. 2000).  We reverse only "'if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Burkley, 513 F.3d at 1190 (quoting Austin, 231 F.3d at 1283).

The jury found Defendant guilty of three counts of mailing threatening communications in violation of 18 U.S.C. § 876(c) which criminalizes knowingly

---

[1] Defendant moved for a judgment of acquittal on all charges pursuant to Fed. R. Crim. P. 29 at the close of the Government's case.  The district court denied the motion, citing United States v. Crews, 781 F.2d 826, 832 (10th Cir. 1986), for the proposition that the jury must decide whether Defendant's statements constituted a true threat.  At the close of all evidence, the court sua sponte renewed all motions made during trial, including Defendant's motion for judgment of acquittal, but reaffirmed its ruling.

4

depositing or causing to be delivered any communication addressed to any other person that contains a threat to injure another. A statute "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." Watts v. United States, 394 U.S. 705, 707 (1969). The First Amendment, therefore, permits conviction under Section 876(c) only if the communication at issue constitutes a "true threat." See Virginia v. Black, 538 U.S. 343, 359–60 (2003) (explaining that the First Amendment "permits a state to ban a 'true threat'"). The Supreme Court has explained that a true threat communicates a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id. at 359.

We have previously defined a true threat "'as a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act.'" Nielander v. Bd. of County Comm'rs, 582 F.3d 1155, 1167 (10th Cir. 2009) (quoting United States v. Viefhaus, 168 F.3d 392, 395 (10th Cir. 1999)). A true threat goes "'beyond the pale of protected vehement, caustic . . . unpleasantly sharp attacks on government and public officials.'" Id. at 1168 (quoting United States v. Crews, 781 F.2d 826, 832 (10th Cir. 1986)). However, a true threat does not require the speaker to "actually intend to carry out the threat." Black, 538 U.S. at 360; Viefhaus, 168 F.3d at 395. Nor does it require proof that he or she "had the apparent

5

ability to carry out the threat. *The question is whether those who hear or read the threat reasonably consider that an actual threat has been made.* It is the making of the threat and not the intention to carry out the threat that violates the law." Viefhaus, 168 F.3d at 395–96 (emphasis in original). The trier of fact, therefore, must decide whether a "reasonable person would find that a threat existed." United States v. Magleby, 241 F.3d 1306, 1311 (10th Cir. 2001).

Whether a communication constitutes a true threat rather than protected political speech is a question we generally leave for the jury. Viefhaus, 168 F.3d at 397 (citing United States v. Leaverton, 835 F.2d 254, 257 (10th Cir. 1987)); see also Crews, 781 F.2d at 832 ("Ultimately the question of whether defendant's statement was political speech was a jury question."). Deciding that issue requires a "fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant." Nielander, 582 F.3d at 1167–68. But we recognize that in those instances in which a defendant's communication constitutes unquestionably protected speech, "the court may dismiss the charge as a matter of law." Viefhaus, 168 F.3d at 397. Defendant's communication in this case, however, does not fall into that category.

First, Defendant maintains the context of his speech reveals its protected nature. He points to its public nature—he mailed the signed and notarized letter to over 200 people with his return address attached. The public nature of a true threat does not make it less of a true threat. In Viefhaus, we concluded a message left on

6

an answering machine for any and all to hear constituted a true threat. Viefhaus, 168 F.3d at 396. Defendant additionally argues out of twenty-seven pages in all, only four parts of his mailing could arguably constitute true threats while the rest is merely political rhetoric. We acknowledge a substantial portion of Defendant's mailing likely constitutes political speech, but we have consistently explained "[t]he fact that a specific threat accompanies pure political speech does not shield a defendant from culpability." Id. When Defendant declared there would be a standoff when authorities came to foreclose on his property, as they informed him they would, in which he would give his life "if need be" and would "take any that will try to come against [him]" he sufficiently passed beyond the pale of unpleasant, caustic, but protected speech to warrant a reasonable jury to conclude he had mailed a true threat.

We also acknowledge the arguably conditional nature of some of Defendant's statements (*i.e.*, his declaration a standoff would occur at the property in question if he was forcibly removed from the premises). But, we have repeatedly "held that a 'statement may constitute a threat even though it is subject to a possible contingency in the maker's control.'" Id. (quoting Leaverton, 835 F.2d at 256); see also Crews, 781 F.2d at 832 n.3 (rejecting the argument that the defendant's speech did not constitute a true threat because it was contingent on the President coming to Wyoming).

As to the recipients' reactions, Defendant concedes three recipients testified

7

that they felt the letter conveyed a threat, but he argues we should give their reaction little deference because they were all involved in law enforcement. We, however, are not at liberty to make credibility determinations for any reason in reviewing the district court's denial of a judgment of acquittal. Austin, 231 F.3d at 1283. Moreover, we must view the testimony in the light most favorable to the Government. Id. We, therefore, can do nothing but conclude the testimony of three witnesses in conjunction with Defendant's statements threatening lethal force against those government officials sent to foreclose on his property provide sufficient basis for a rational trier of fact to find beyond a reasonable doubt his statements constituted true threats.

## III.

In addition, Defendant asserts we should reverse the district court's denial of his motion for judgment of acquittal with respect to count five because the recipient identified in that count was not a government employee. Count five of the indictment charged Defendant with "knowingly caus[ing] to be delivered . . . a communication dated August 10, 2008 addressed to Fred Bass, c/o Internal Revenue Service . . . who is an official covered by 18 U.S.C. § 1114, and containing a threat to injure government agents and officials. In violation of Title 18, United States Code, 876(c)." Section 876(c) provides a five year maximum term of imprisonment for threatening communications addressed to anyone. But the second sentence of Section 876(c) provides that if a threatening "communication is addressed to a

8

United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both." Section 1114, in turn, criminalizes killing or attempting to kill:

> [A]ny officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of such official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance. . . .

18 U.S.C. § 1114. Defendant maintains that Section 876(c)'s second sentence is a separate offense from the first sentence, and in order to be convicted of the separate offense of mailing threatening communications to a government official, the jury had to find beyond a reasonable doubt four elements. The first two are also the elements of the offense in Section 876(c)'s first sentence: (1) the Defendant knowingly deposited in the mail a communication containing a threat (2) to injure someone. The second two elements Defendant asserts are unique to the offense of mailing threatening communications to a government official: (3) the recipient of the threatening communication must be a government official (4) who received the communication while engaged in or on account of his or her official duties. The Government and Defendant agree that Bass is an alias for an IRS agent assigned to Defendant's tax collection case who retired approximately eighteen months before Defendant sent the mailing at issue. Defendant, therefore, argues as a matter of law

9

Bass is not a government official protected by Section 876(c) and, in addition, no reasonable jury could find that the third and fourth elements of the offense in the second sentence of Section 876(c) were satisfied beyond a reasonable doubt.

The Government responds that the second sentence of Section 876(c) is not a separate offense. It, instead, contends the second sentence merely adds a sentencing factor to the single offense of mailing a threatening communication set forth in Section 876(c)—if the recipient is a government official as defined by Section 1114 then the defendant may be sentenced up to ten years rather than up to five years if the communication is addressed to someone other than a government official. In the alternative, the Government argues first, the district court did not err when it submitted the question of whether Bass is a government employee to the jury and second, the jury reasonably determined Bass is a government employee, because the evidence demonstrates Defendant sent Bass the threatening letter on account of the performance of his official duties as a revenue officer at the IRS.

For the purposes of evaluating Defendant's challenge to count five, we may assume without deciding that the second sentence of Section 876(c) constitutes a separate offense—mailing a threatening communication to a government official.[2]

---

[2] We see good reason to think Defendant has the better part of this argument. After Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." See also 2 L. Sand, et al., Modern Federal Jury Instructions—Criminal ¶
(continued...)

10

"We review the district court's interpretation of a statute de novo." United States v. Martin, 163 F.3d 1212, 1214 (10th Cir. 1998). We have explained that "while the type of individual encompassed by § 1114 is a legal question for the court, the jury must decide the ultimate issue of fact—whether [the victim] was engaged in the performance of federal duties." Id. The district court evidently concluded as a matter of law that retired Bass is the type of individual encompassed by Section 1114, and thus Section 876(c), because it denied Defendant's motion for judgment of acquittal as to count five and asked the jury in its verdict form whether it found "beyond a reasonable doubt, the communication in Count 5 was addressed to a United States judge, a federal law enforcement officer, or an employee of the federal government while engaged in or on account of the performance of official duties." The jury answered "yes."

We had to answer a similar question posed by these facts in United States v. Martin, 163 F.3d 1212, 1214 (10th Cir. 1998). In that case, we had to decide "whether a local police detective deputized to participate in a federal narcotics investigation is a federal officer within the meaning of 18 U.S.C. § 115(a)(1)(B). . . [which] makes it a crime to 'threaten [ ] to . . . murder . . . a Federal law

²(...continued)
31.03, Instruction 31-16, cmt. ("As this [second sentence of Section 876(c)] effectively doubles the potential maximum penalty for a violation of section 876(c), it would appear that the issue must be submitted to the jury under Apprendi v. New Jersey.").

11

enforcement officer, or an official whose killing would be a crime under [18 U.S.C. § 1114].'" Id. We concluded that he was a federal officer within the meaning of Section 1114 and Section 115, explaining that the detective "was deputized to participate in a federal investigation during the time that the charged conduct occurred. Moreover, even if [the detective] had stopped working with the [federal investigation] by the [time the charged conduct occurred], he still would have enjoyed the protection of § 115 because the threats could be construed as retaliation for earlier federal indictments with which he assisted." Id. at 1215. In so concluding, we cited United States v. Raymer, 876 F.2d 383, 390 (5th Cir. 1989), which held that Section 115 covers "an official not only while he was in the performance of his duties but also against retaliation after his duties were completed." The Fifth Circuit explained that Section 115's language:

> [P]rohibits threats against an official "with intent to . . . retaliate against such official . . . *on account of the performance of official duties.*" These words would clearly cover an official not only while he was in the performance of his duties but also against retaliation after his duties were completed. An off-duty official who was threatened or assaulted in retaliation for previous performance of his duties would be covered under the plain language of the statute. It is also reasonable, therefore, to conclude that a retired official subject to retaliation because of previous performance of duties is in the same position as an official who is currently employed by the government but is off-duty. Neither one need be currently performing his duties when experiencing retaliation. The only difference between the two is that the former is in a sense permanently off-duty. Hence it would be illogical not to extend the protection of the statute to the retired official.

Raymer, 876 F.2d at 390 (emphasis added). Similarly, Section 1114 covers any

officer or employee of the United States government "while such officer or employee is engaged in or *on account of the performance of official duties*." 18 U.S.C. § 1114. The statute Defendant was convicted of violating, Section 876(c), incorporates Section 1114's definition of a government official or employee. The logic of <u>Martin</u> and <u>Rayner</u> compels us to agree with the district court that Section 876(c)'s offense of addressing threatening communications to a government official applies to threatening communications sent to retired government officials on account of the performance of their official duties. Consequently, the district court did not err as a matter of law in submitting to the jury the question of whether Bass received Defendant's threatening communication while he was a government official or employee engaged in or on account of his performance of official duties. Given that no one disputes Bass was an IRS officer assigned to Defendant's tax collection matter, we also conclude sufficient evidence appears in the record for a reasonable jury to find beyond a reasonable doubt that Bass received Defendant's threatening communication on account of the performance of his official government duties.

Defendant also asserts because Fred Bass is an alias and not the real name of a person, the recipient listed in count five of the indictment is not a real person within the meaning of Section 876(c). We find no support in the case law of any circuit for this specific proposition, nor does Defendant attempt to provide any. However, we have found an apt analogy. In <u>United States v. Williams</u>, 376 F.3d 1048, 1052 n.4 (10th Cir. 2004), we considered whether a government official is a

13

"person" within the meaning of Section 876 before Congress amended it to include a greater term of imprisonment for communications addressed to government officials. The defendant in Williams had addressed some of the communications that were the basis of his convictions to the "U.S. Attorney" and "Clerk of Courts." We explained that the purpose of Section 876 "informs us that the 'person' . . . who is threatened by the communication, must be capable of having a sense of personal safety. A government official, being a natural person, has such a sense of personal safety that can be threatened by the proscribed communication." Id. at 1053. Thus, we held "a government official is a 'person' . . . because communications addressed to a specific government official are clearly targeted at the natural person who holds that office at the time, regardless of whether the communication also mentions that individual's proper name." Id. Similarly, a threatening communication addressed to a government employee's designated alias that she uses in the performance of her official duties clearly targets the natural person who uses that alias at the time, "regardless of whether the communication also mentions that individual's proper name." Id. Moreover, in Williams, count one of defendant's indictment charged him with violating Section 876 by mailing a threatening communication with the salutation "Hey Asshole." Id. at 1054. We nonetheless concluded "the jury could have reasonably inferred that the salutation . . . was addressed to the U.S. Attorney, given that the envelope was addressed to "U.S. Dist. Attorney Office's." Id. Likewise, in this case, Defendant addressed the communication at issue to "Fred

14

Bass, c/o Internal Revenue Service, 301 South Howes Street, Room 302, ATTN: MS5446FC, Fort Collins, Colorado." Because no one disputes that Fred Bass was the alias of the IRS employee assigned to Defendant's tax collection matter in the IRS office located at the very address provided by Defendant, the jury could reasonably infer Defendant sent his mailing to the human he knew to be assigned to his tax collection matter. After all, as Shakespeare once said, "What's in a name? [T]hat which we call a rose / By any other name would smell as sweet." William Shakespeare, <u>Romeo and Juliet</u> act 2, sc. 2. No matter what we call Fred Bass, he remains the very real person who had the task of collecting Defendant's unpaid taxes while working for the IRS in Fort Collins, Colorado.

IV.

Lastly, Defendant claims the district court erred in admitting evidence of his lawful possession of firearms because it is irrelevant and, in the alternative, unfairly prejudices his defense.[3] The Government asserts the evidence that Defendant had multiple guns and ammunition in his house and vehicle was directly relevant to proving counts two through six without unfairly prejudicing Defendant's case.

Count two charged Defendant with:

[C]orruptly and by threats of force endeavor[ing] to intimidate and

---

[3] Defendant contested the admissibility of the firearms and ammunition seized in his car and from his residence in a motion in limine, which the district court denied.

15

> impede officers and employees of the United States acting in their official capacity under Title 26, United States Code, by (1) refusing to vacate [his residence] that had been foreclosed due to federal income tax liabilities as ordered . . . (2) posting notices on the foreclosed property threatening to use force against law enforcement officers; and (3) barricading entry doors to the foreclosed property and placing loaded firearms in the various locations in the foreclosed property. In violation of Title 26, United States Code, 7212(a).

As we have explained, "'[i]n order to establish a violation of 26 U.S.C. § 7212(a), the [G]overnment must prove that a defendant "corruptly" endeavored to obstruct and impede the due administration of the internal revenue laws.'" United States v. Thompson, 518 F.3d 832, 855 (10th Cir. 2008) (quoting United States v. Winchell, 129 F.3d 1093, 1098 (10th Cir. 1997)). To act corruptly in the context of Section 7212(a) "'means to act with the intent to secure an unlawful benefit either for oneself or for another.'" Id. (quoting Winchell, 129 F.3d at 1098). Defendant argues the Government did little to show how his lawful possession of firearms actually constituted a step towards impeding law enforcement. He contends because the Government provided no evidence he purchased or loaded the firearms for the purpose of impeding foreclosure, it legitimately gained little from introducing the firearms evidence to prove count two. The Government responds the evidence of Defendant's possession and placement of the firearms and ammunition in his home and vehicle reveal Defendant endeavored to intimidate and impede any government officer who attempted to evict him from and foreclose upon his residence. According to the Government, this evidence also demonstrates Defendant acted

16

knowingly and dishonestly with the specific intent to secure an unlawful benefit for himself: to remain unlawfully in his residence.

We review the district court's decision to admit the firearms evidence "'solely for abuse of discretion.'" United States v. Caraway, 534 F.3d 1290, 1300–01 (10th Cir. 2008) (quoting United States v. Chisum, 502 F.3d 1237, 1241 (10th Cir. 2007)). This standard of review dictates we may not reverse the district court's evidentiary ruling if "it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." United States v. Smith, 534 F.3d 1211, 1218 (10th Cir. 2008) (quoting United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006)) (internal quotations omitted). Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Regardless of when and why Defendant initially purchased and loaded the weapons, he knew authorities were going to foreclose upon and evict him from his residence. Defendant's placement of the firearms and additional ammunition in his home and his vehicle, therefore, have at least a tendency to make it more probable than not that he did, in fact, endeavor to impede government officials corruptly or by threats of force. For this reason, we conclude the district court did not abuse its discretion in admitting this evidence and permitting the jury to draw reasonable inferences therefrom.

As to counts three through six, Defendant claims the firearms evidence is not

17

relevant because proving whether Defendant communicated a true threat does not require the Government to show he intended or had the apparent ability to carry out the threat. See Viefhaus, 168 F.3d at 395–96. Additionally, though he agrees the context in which his communication was made and recipients' reactions to his communication are relevant to whether he communicated a true threat, Defendant argues his mailing did not mention firearms and it was not common knowledge that he possessed firearms. Defendant asserts the firearms evidence, consequently, is not part of the context of the communication at issue or a factor in the recipients' reactions the jury could properly consider.

We agree with Defendant that the Government does not need to prove he intended to or had the ability to carry out the threat. However, we have concluded that evidence demonstrating a defendant had the intention and ability to carry out a threat does go to whether the threat is a true one. Such evidence is "'probative of [a] defendant's state of mind and tends to counter [an] allegation of benign purpose.'" Viefhaus, 168 F.3d at 397 (quoting United States v. Cox, 957 F.2d 264, 267 (6th Cir. 1992)). In Viefhaus, we affirmed the district court's admission of evidence of Nazi propaganda, books on making bombs, chemicals used to make bombs, and weapons seized from Viefhaus's home. Viefhaus, 168 F.3d at 395, 397. We explained that because Viefhaus's primary defense was that his statements to the effect that a holy war would commence and bombs would explode in fifteen cities were not true threats, the context and circumstances surrounding those statements

18

were critical to determining whether they were in fact true threats. Id. at 398. Those circumstances included the items seized from his home because "[t]he only way a jury could properly assess the sincerity of Viefhaus's beliefs, as well as the likely effect Viefhaus's message would have on an objective listener, was to examine the circumstances in which the comments were made." Id. Similarly, in this case, Defendant admits to writing and mailing the statements at issue, but contends they were not true threats, merely political rhetoric. We conclude the evidence of Defendant's possession and placement of firearms and ammunition in his residence and vehicle goes to whether he possessed the intent and ability to carry out his threat of lethal force against those authorities sent to foreclose on his residence, which is probative of his state of mind and tends to counter his benign purpose defense.

Defendant also contends the firearms evidence unfairly prejudiced his defense. Because the district court did not abuse its discretion in finding the evidence relevant, it should only have excluded the evidence if the danger of unfair prejudice substantially outweighed its probative value. Fed. R. Evid. 403. To minimize any possible unfair prejudice, the district court instructed the jury that Defendant's "possession of firearms was lawful" and that it could "only consider his possession of firearms to the extent, if any, that such possession either made the threat contained in the letter more likely a true threat or that he possessed the firearms with the intent to intimidate or impede . . . official officers and employees of the United States." In light of the demonstrated probative value of the firearms

19

evidence and this limiting instruction, any risk of unfair prejudice, if it existed at all, did not substantially outweigh the evidence's probative value. Thus, the district court did not abuse its discretion in admitting the evidence.

For these reasons, the judgment of the district court is

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge