FILED
United States Court of Appeals
Tenth Circuit

March 17, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN S. WILLIAMSON,

    Defendant - Appellant.

No. 13-2023

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:11-CR-02784-JB-1)

Brian A. Pori, Assistant Federal Public Defender, Albuquerque, New Mexico, for
Defendant – Appellant.

Mary L. Higgins, Assistant United States Attorney, (Kenneth J. Gonzales, United States
Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff – Appellee.

Before **KELLY**, **HARTZ**, and **MATHESON**, Circuit Judges.

**HARTZ,** Circuit Judge.

Defendant John S. Williamson has been protesting taxes for 30 years. In May 2008 the Internal Revenue Service (IRS) levied his wife's wages to collect his back taxes. The IRS sent a notice of the levy, which Defendant returned, writing across the document: "Refused for cause. Return to sender, unverified bill." R., Vol. 3 pt. 2 at 169. He enclosed his affidavit explaining why he did not need to pay income taxes. Subsequent notices of the levy were also returned.

In June 2008, Defendant sent an invoice for $909,067,650.00 to two IRS agents who had worked on the matter. The invoice listed the value of real and personal property allegedly seized by the IRS, added damages for various alleged torts, and then trebled the total "for racketeering." Add. to Aplt.'s Opening Br. at 33. In December 2008, Defendant and Mrs. Williamson filed with the clerk of Bernalillo County, New Mexico, a claim of lien against the agents' real and personal property for the same amount as the invoice. The claim alleged that the agents:

> unlawfully, without benefit of a valid court order lev[ied Mrs.] Williamson's earnings, did cause false and fraudulent Notices of Federal Tax Liens to be filed in the Bernalillo County record, did cause void judgments to deprive the Williamson's [sic] of their real-estate, vehicles and personal property, did slander and defame the Williamson's [sic] good name and credit.

R., Vol. 1 at 28.

A grand jury of the United States District Court for the District of New Mexico indicted Defendant and Mrs. Williamson on two counts: (1) "corruptly endeavor[ing] to impede the due administration of the Internal Revenue Code by filing a false and fraudulent Claim of Lien," in violation of 26 U.S.C. § 7212(a); and (2) "fil[ing] . . . a

false lien and encumbrance against the real and personal property [of the IRS agents] on account of the performance of [their] official duties," in violation of 18 U.S.C. § 1521. *Id.* at 12–13. Mrs. Williamson pleaded guilty to the second count in return for dismissal of the first count against her.

Defendant, however, proceeded to trial. His defense was essentially that he genuinely believed his lien was proper. A forensic psychologist testified that Defendant suffered from a delusional disorder that prevented him from abandoning his beliefs even when confronted with overwhelming evidence that he was wrong. Defendant requested instructions that would support his "genuine belief" defense to both charges, but the court rejected them and the jury returned verdicts of guilty on the two charges. He was sentenced to four months in prison and three years of supervised release.

Defendant appeals his conviction, challenging the district court's failure to give the requested jury instructions. We affirm.

## I. DISCUSSION

"This court reviews a trial court's decision on whether to give a particular jury instruction for abuse of discretion and views the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law." *United States v. Villegas*, 554 F.3d 894, 900 (10th Cir. 2009) (internal quotation marks omitted). An additional "instruction is not required if it would simply give the jury a clearer understanding of the issues." *United States v. Bowling*, 619 F.3d 1175, 1184 (10th Cir. 2010) (internal quotation marks omitted). And, of course, the court can reject an

3

instruction that misstates the law.  *See United States v. Pinson*, 542 F.3d 822, 831 (10th

Cir. 2008).  We first address Defendant's argument that he was entitled to an additional

instruction on § 7212(a) and then turn to § 1521.

## A.       Section 7212(a)

Mr. Williamson challenges the instructions on 26 U.S.C. § 7212(a) because they

did not inform the jury that he could be guilty only if he intentionally violated a known

legal duty.  Section 7212(a) provides:

> Whoever corruptly or by force or threats of force (including any threatening
> letter or communication) endeavors to intimidate or impede any officer or
> employee of the United States acting in an official capacity under this title,
> or in any other way corruptly or by force or threats of force (including any
> threatening letter or communication) obstructs or impedes, or endeavors to
> obstruct or impede, the due administration of this title, shall, upon
> conviction thereof, be fined . . . or imprisoned.

The district court's instructions set forth the elements of the offense as follows:

> *First:* The defendant in any way corruptly;
> *Second:*  Endeavored to;
> *Third:*  Obstruct or impede the due administration of the Internal
> Revenue Laws.

R., Vol. 1 at 221.  The instructions then defined several of the terms that appeared in the

elements:

> **"Endeavor"** means to knowingly and intentionally make any effort
> which has a reasonable tendency to bring about the desired result.  It is not
> necessary for the Government to prove that the "endeavor" was successful.
>     To act **"corruptly"** is to act with the intent to gain an *unlawful*
> advantage or benefit either for oneself or for another.
>     To **"obstruct or impede"** is to hinder or prevent from progress; to
> slow or stop progress; or to make accomplishment difficult or slow.

4

The phrase **"due administration of the Internal Revenue laws"** means the Internal Revenue Service of the Department of the Treasury carrying out its lawful functions to calculate and collect income taxes.

*Id.* at 222 (italics added).

At trial, defense counsel did not challenge the accuracy of these instructions but argued that the court should add a definition of *unlawful* (which appears in the definition of *corruptly*). He stated that "the definition of unlawful in the Tenth Circuit is, 'with the specific intention to do something the law forbids'" and that "an alternative definition of unlawfully would be violation of a known legal right." *Id.*, Vol. 3 pt. 3 at 359. Also, quoting *United States v. Winchell*, 129 F.3d 1093 (10th Cir. 1997), he said that he would accept as the definition: "'[a] voluntary, intentional violation of a known legal right.'" *Id.* at 360. When the government pointed out that *Winchell* was defining *willful*, not *unlawful*, defense counsel asserted that "unlawful and willfulness converge in this instance," but offered that he would be "happy to defer to any other definition of unlawfulness, which the Tenth Circuit set out in *Winchell.*" *Id.* at 361. The court ended the discussion by saying, "I don't think we need a definition of unlawful." *Id.* On appeal Defendant argues that *unlawful* should have been defined and that he could be guilty of violating § 7212(a) only if his acts were an "intentional violation of a known legal duty." Aplt. Br. at 39 (italics omitted).

Insofar as Defendant is arguing that the word *unlawful* in the instructions should have been defined, we disagree. The meaning of *unlawful* is common knowledge and ordinarily does not need to be defined. *See Atchison, Topeka & Santa Fe Ry. Co. v.*

5

*Preston*, 257 F.2d 933, 937 (10th Cir. 1958) ("[A] court is not required to define words and phrases which are familiar to one of ordinary intelligence."). We note that the Tenth Circuit Criminal Pattern Jury Instructions repeatedly use the word *unlawful* but never define it, and the Tenth Circuit case adopting the instruction used at Defendant's trial saw no need to define it. *See Winchell*, 129 F.3d at 1098. Defendant cites no authority requiring it to be defined or defining it as he proposes.

Perhaps Defendant is trying to argue something a bit different from the failure to define *unlawful* and is simply asserting that the instructions did not impose the proper *mens rea* requirement. This alternative argument is suggested by his reliance on *Cheek v. United States*, 498 U.S. 192 (1991). In *Cheek* the issue was the meaning of *willfully* as used in 26 U.S.C. § 7201 and 26 U.S.C. § 7203. *Id.* at 194. The Supreme Court concluded, using the language Defendant would have liked in his jury instruction, "that the standard for the statutory willfulness requirement is the *voluntary, intentional violation of a known legal duty*," *id.* at 201 (emphasis added) (internal quotation marks omitted), and that a defendant can overcome this requirement by showing that he acted in the good-faith belief that he was complying with the law, even if the belief was not objectively reasonable, *see id.* at 203–04.

The problem for Defendant is that § 7212(a) does not use the word *willfully*. *Cheek* was not a constitutional decision requiring a particular state of mind before one could be convicted of a tax offense. It was interpreting statutory language—language not present in § 7212(a). No decision of the Supreme Court, or of this court, has held that

6

Defendant's suggested *mens rea* requirement is the *mens rea* required for violation of § 7212(a). Nor is there any compelling reason to believe that Congress wanted the *Cheek* standard to apply to § 7212(a). Rather than using the word *willfully*, it used *corruptly* to define the *mens rea* for § 7212(a). And the federal appellate courts have agreed (although with some insignificant variations in language) on the definition of *corruptly* that appears in the district court's instruction: "To act 'corruptly' is to act with the intent to gain an unlawful advantage or benefit either for oneself or for another." R., Vol. 1 at 222. *See United States v. Floyd*, 740 F.3d 22, 31 (1st Cir. 2014) (collecting cases); *United States v. Crim*, 451 F. App'x 196, 201 (3d Cir. 2011).

Moreover, the definition of *willfully* in *Cheek* and the definition of *corruptly* in the instructions in Defendant's trial have much in common. Indeed, the Second Circuit has suggested that an instruction like the one here "was as comprehensive and accurate as if the word 'willfully' was incorporated in the statute." *United States v. Kelly*, 147 F.3d 172, 177 (2d Cir. 1998). If there is something missing or ambiguous in the "corruptly" instructions that could be cured only by using the language taken from the definition of *willfully*, Defendant needed to point that out to the district court. On appeal, Defendant argues (at least indirectly) that what is missing from the instructions at his trial (and is conveyed in the language "intentionally violated a known legal duty," Aplt. Br. at 42) is that the jury, although instructed that he must have acted "with the intent to gain an unlawful advantage or benefit," was not told that it must find that he knew that the advantage or benefit was unlawful. *Id.* at 38. But that is not the argument made by

7

Defendant at trial. Defense counsel's brief argument to the district court consistently framed his concern in terms of the need to define *unlawful*, ending with the statement, "So I'm happy to defer to any other definition of unlawfulness, which the Tenth Circuit set out in *Winchell*." R., Vol. 3 pt. 3 at 361. (The reference to *Winchell* is puzzling because that opinion defined *corruptly* in essentially the same language as the instructions at Defendant's trial and did not define *unlawful*. *See* 129 F.3d at 1098–99.) We can hardly expect a trial judge to infer that defense counsel is making a *mens rea* argument when counsel insists that he just wants the word *unlawful* to be defined in the instructions. The patient, experienced, and highly intelligent trial judge in this case certainly did not understand the argument as Defendant presents it on appeal, concluding the discussion with the ruling, "I don't think we need a definition of unlawful." R., Vol. 3 pt. 3 at 301.

Because Defendant's argument at trial did not alert the district court to the argument raised on appeal, we review the appellate argument under the plain-error standard. *See United States v. Bedford*, 536 F.3d 1148, 1153 (10th Cir. 2008). To establish plain error, Defendant must show "(1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). We need not resolve whether the "corruptly" instruction was flawed. We leave to another day whether a conviction under § 7212(a) requires that the defendant knew that the advantage or benefit he sought was unlawful and, if so, whether the instruction here would adequately

8

inform a jury of that requirement. On this appeal it is enough that the second requirement of plain-error review (that the error be plain) is not satisfied. Although, as previously noted, the instructions used by the district court are in common use, Defendant has not cited any decision, much less a decision by this court or the United States Supreme Court, holding that they are improper in a § 7212(a) prosecution. *See United States v. Fishman*, 645 F.3d 1175, 1193 (10th Cir. 2011) ("In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." (internal quotation marks omitted)).

Defendant argues that he has at least shown that the elements of § 7212(a) are doubtful and that therefore the rule of lenity requires that we interpret the statute in his favor. But that rule cannot overcome the requirements of plain-error review. The doubt required for the rule of lenity must be doubt raised by an adequately preserved argument. Otherwise, the second prong of plain-error review (that the appellant show that the alleged error was plain) would be eviscerated. *See United States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003) ("When the choice between two possible meanings of a statute is so open to debate that the rule of lenity comes into play, one can hardly say that either interpretation is *plainly* wrong.").

Finally, Defendant raises snippets of what may be arguments supporting his proposed instruction. But the arguments were not raised in district court and are not properly presented in his opening brief on appeal. We therefore reject them. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have

9

declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("It is clear in this circuit that absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").[1]

## B. Section 1521

Defendant also challenges the district court's failure to instruct the jury on his good-faith defense to the charge under 18 U.S.C. § 1521. Section 1521 provides:

> Whoever files, attempts to file, or conspires to file . . . any false lien or encumbrance against the real or personal property of an individual . . . on account of the performance of official duties by that individual, *knowing or having reason to know* that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned . . . or both.

(emphasis added). As with the instructions on § 7212(a), the district court's instructions on § 1521 set forth the elements of the offense and then defined several terms used in the elements instruction:

> In order for you to find the defendant guilty of [violating § 1521], the Government must prove each of the following beyond a reasonable doubt:

---

[1]  Defendant's counsel at oral argument said that he was also challenging the rejection of his proposed good-faith instruction on § 7212(a). But Defendant did not make that argument in his opening brief. On the contrary, he summed up his § 7212(a) argument by saying, "For the same reasons the evidence supported the giving of a good faith jury instruction with respect to the § 1521 charge, as discussed above, the evidence supported the district court instructing the jury that to convict Mr. Williamson of violating § 7212(a) it had to find he intentionally violated a known legal duty." Aplt. Br. at 42 (citation omitted). We do not address arguments that "are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson*, 500 F.3d at 1104.

>           *First:*  The defendant filed a false lien or encumbrance in a public record;
>           *Second:*  The lien or encumbrance was filed against the property of an employee of the United States Government;
>           *Third:*  The lien or encumbrance was filed because of that employee's performance of his official duties; and
>           *Fourth:*  The defendant knew or had reason to know that such lien or encumbrance was false, or that it contained a materially false statement.

R., Vol. 1 at 223.

>           A statement is **"false"** if it is untrue, or is made with reckless indifference for the truth.  A statement can be false if it is half true, or omits or conceals a "material" fact.
>           A **"material"** fact is a fact that tends to influence a decision of the person to whom it is addressed.  A statement can be "material" even if nobody was actually influenced in any way.
>           A **"lien"** is a legal right or interest that a creditor has in another's property to secure payment of a debt or performance of an obligation.
>           An **"encumbrance"** is a claim or liability that is attached to property and that may lessen its value.
>           An **"employee of the United States Government"** includes employees of the IRS and the Department of Treasury.  The IRS and the Department of Treasury are agencies of the United States Government.

*Id.* at 224.  At trial, Defendant did not challenge the accuracy of these instructions but argued that the court should include a good-faith instruction.  On appeal he argues that this error prevented the jury from exonerating him if it found that he honestly believed that he had not filed a false lien.

Under § 1521, however, a defendant can be guilty even if he honestly believed that he filed a proper lien so long as the belief was not a reasonable one.  The statute prohibits not only filing a false lien "knowing" that the lien was false, but also filing a false lien "having reason to know" that it was false.  In other words, the jury may convict the

11

defendant if a reasonable person who possessed the information possessed by the defendant would have the requisite knowledge of falsity. *See United States v. Saffo*, 227 F.3d 1260, 1268–69 (10th Cir. 2000) (addressing "knowing or having reasonable cause to believe" in 21 U.S.C. § 841(d)(2)—now § 841(c)(2)); *United States v. Munguia*, 704 F.3d 596, 602–03 (9th Cir. 2012) (following *Saffo*)). This standard may be said to include both a subjective component (that is, what information this particular defendant had) and an objective component (what a reasonable person would infer from that information).[2]

A good-faith instruction would be inconsistent with the objective component of the having-reason-to-know requirement. It would protect a defendant when a reasonable person who knew what defendant knew would infer that the lien was false. Defendant is not entitled to a not-guilty verdict just because, as his expert witness testified, he suffered from a delusional disorder that prevented him from abandoning his beliefs even when confronted with overwhelming evidence that he was wrong. Given the clarity of the

---

[2] Language in *United States v. Truong*, 425 F.3d 1282, 1290–91 (10th Cir. 2005), suggests a broader reading of *Saffo* than the interpretation we share with *Munguia*. But the holding in *Truong* is consistent with, and a good illustration of, *Saffo* as we interpret it. In *Truong* we held that there was insufficient evidence that the defendant had "reasonable cause to believe" that the pseudoephedrine he was selling would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2), because there was no evidence that he personally knew that pseudoephedrine could be used in the manufacture of methamphetamine. *Id.* at 1289 (internal quotation marks omitted). Thus, based on only the information known to the specific defendant, a reasonable person would not have had reason to believe that the pseudoephedrine would be used to make methamphetamine.

12

statutory language, we also reject Defendant's arguments based on the rule of lenity and the alleged complexity of lien law.

## II.     CONCLUSION

We AFFIRM Defendant's convictions.