FILED
United States Court of Appeals
Tenth Circuit

September 3, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RONNIE KASHAWN DODDLES,
a.k.a. Phatt Man,

      Defendant-Appellant.

No. 07-6169

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 06–CR–136–M)**

---

Randal D. Morley, Birmingham, Morley, Weatherford & Priore, P.A., Tulsa, Oklahoma, for Defendant-Appellant.

Jonathon E. Boatman, Assistant United States Attorney (John C. Richter, United States Attorney, and Sanford C. Coats, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **O'BRIEN** and **McKAY**, Circuit Judges, and **BRIMMER**,[*] District Judge.

---

**McKAY**, Circuit Judge.

      Defendant was convicted of one count of conspiracy to possess with intent

---

[*] The Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

to distribute cocaine base, cocaine, marijuana, and ecstasy; one count of possessing ecstacy with intent to distribute; one count of possessing cocaine base, cocaine, and marijuana with intent to distribute; and five firearm possession counts. He was sentenced to a 480-month term of imprisonment. On appeal, he argues that two of the counts of conviction were not supported by sufficient evidence and that the prosecutor elicited prejudicial testimony that deprived him of his right to a fair trial.

According to the evidence introduced at trial, Defendant was a member of a gang known as the Playboy Gangster Crips, which dealt drugs from June 2004 to July 2005 out of a house in Oklahoma City rented by gang member Michael Maytubby and his girlfriend. Witnesses testified that Defendant and other gang members used and sold drugs at the residence, warned neighbors not to contact the police, regularly carried guns, and engaged in a violent shootout with a rival gang on the street in front of the residence. Searches of the residence on October 17, 2004, and July 6, 2005, uncovered cash, firearms, ammunition, and various types of drugs.

Defendant challenges the sufficiency of the evidence supporting his convictions for possessing ecstasy with intent to distribute on October 17, 2004, and possessing a firearm in furtherance of a drug-trafficking crime on July 6, 2005. We review this issue de novo to determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime[s] beyond a reasonable doubt." *United States v. McPhilomy*, 270 F.3d 1302, 1307 (10th Cir. 2001) (internal quotation marks omitted). In so doing, we resolve any possible conflicts in the evidence in favor of the government and assume that the jury found that evidence credible. *United States v. Williamson*, 53 F.3d 1500, 1516 (10th Cir. 1995).

The ecstasy possession count was based on twenty ecstasy pills found in a rifle case in Mr. Maytubby's bedroom closet on October 17, 2004, the night of the gang shootout. To establish that Defendant constructively possessed this ecstasy, the government was required to show "some nexus, link, or other connection between [Defendant] and the contraband." *See United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996). The government could establish that nexus by presenting "some evidence supporting at least a plausible inference that [Defendant] had knowledge of and access to" the ecstasy. *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000) (internal quotation marks omitted).

The government presented evidence that Defendant was present and involved in the shootout. One neighbor testified that he saw Defendant and other gang members come out of the house and exchange gunfire with people on the street, who were, according to an investigating officer's testimony, members of a rival gang. When the police arrived at the residence shortly after the shooting stopped, they found Defendant and two other gang members pretending to be

asleep inside. The government also presented substantial evidence regarding Defendant's participation in the gang's ongoing drug-trafficking activities, including direct testimony that Mr. Maytubby sometimes left Defendant in charge of drug sales at the residence when he went out. The jury heard testimony that Defendant had full access to Mr. Maytubby's bedroom and that he sometimes went into this room to retrieve crack cocaine for sale. The jury further heard testimony that the ecstasy pills were located in the same unlocked container as a set of digital scales bearing cocaine residue. An expert witness testified that it would not be unusual for the leader of a drug-trafficking gang to keep the drugs in his bedroom and provide smaller quantities of drugs to other members of the gang as needed for sales.

Taken in the light most favorable to the government, we conclude that the evidence supported a reasonable inference that Defendant had knowledge of and access to the ecstasy at issue. *See McKissick*, 204 F.3d at 1298. We further conclude, based on the testimony that twenty pills is a distributable quantity and that individual users will not usually own this many pills at one time, that the government introduced sufficient evidence to satisfy the intent element of the crime. *See id.* at 1298-99. We thus sustain Defendant's conviction as to this count.

The contested firearm possession count stemmed from the July 6, 2005 discovery of four firearms in Mr. Maytubby's bedroom and one firearm in a

vehicle outside the house. The July 6 search also uncovered hundreds of rounds of ammunition, a small vial of what appeared to be PCP, numerous individual baggies and one large block of marijuana, a significant amount of cocaine powder, a large quantity of crack cocaine, four sets of digital scales, and over $4000 in cash, which was placed in a drawer in a manner suggesting that various amounts had been collected during different transactions. Crack cocaine, marijuana, and one set of digital scales were located in plain sight on the kitchen table, and an officer testified that it appeared that the marijuana seeds and stems were being separated out in preparation for sale. Defendant and several other gang members had been present in the house just prior to the search.

In contesting the sufficiency of the evidence as to this count, Defendant points out that no one testified to seeing him with a firearm on July 6 and that no firearms were found in the room he was in, nor was he carrying a firearm at the time of the search. However, one regular visitor to the house testified that Defendant carried a gun with him when he went outside but that he did not usually carry a gun around the house. Another witness testified that Defendant's gun was "[l]ike an American Express card . . . he wouldn't leave home without it." (Tr. at 172.) Witnesses also testified to seeing Defendant with various types of guns on different occasions. In addition, one witness testified that he frequently saw guns laying around the house. Moreover, the jury heard expert testimony that members of drug-distributing gangs may make their guns available

-5-

to other gang members who need them and may keep a stash of guns in a central location for communal access. Four of the firearms at issue in this count were found in easily accessible locations in Mr. Maytubby's bedroom, which Defendant had full access to. Indeed, one firearm was located in the very drawer from which Defendant had obtained drugs for purchase on other occasions, next to a substantial quantity of marijuana and a large amount of cash. We thus conclude that the government introduced sufficient evidence to "support[] at least a plausible inference that [Defendant] had knowledge of and access to the weapon[s]." *United States v. Taylor*, 113 F.3d 1136, 1145 (10th Cir. 1997).

We likewise reject Defendant's contention that the government introduced insufficient evidence to support a conclusion that the firearms were possessed in furtherance of a drug-trafficking crime. Given the close proximity of the firearms to drugs and drug proceeds, the evidence that Defendant and other gang members routinely carried guns during the course of the conspiracy, the evidence that Defendant and others used firearms to fight a rival gang, and the expert testimony that the firearms and ammunition found in the bedroom were consistent with drug-related gang activity, we conclude that the government introduced ample evidence to support this element of the crime. We thus reject Defendant's sufficiency challenge to his conviction on this count.

Defendant also objects to certain testimony elicited by the government at trial. First, Defendant objects to the government's elicitation of testimony that

witnesses were threatened by gang members and feared retaliation for testifying at Defendant's trial. Second, he objects to the mischaracterization of two of his state misdemeanor convictions as felonies. Because Defendant did not raise these objections at trial, we review only for plain error. *United States v. Hooks*, 780 F.2d 1526, 1535 (10th Cir. 1986). Thus, we will not reverse unless Defendant shows the occurrence of an error that was plain, that affected his substantial rights, and that "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted).

The government elicited information from various witnesses regarding threats made by gang members both during the course of the conspiracy and after the conspiracy had ended. Defendant objects to testimony regarding post-conspiracy threats and witnesses' fear of retaliation, specifically: (1) a witness's testimony that he initially lied to the grand jury because he was scared he would have to testify against the gang members, who might then retaliate against him while he was in jail, (2) this witness's affirmative response to the prosecutor's query whether he currently was scared and feared retaliation, (3) a second witness's statement that he did not want to testify at this trial because he was afraid of the outcome after he left the courthouse, (4) a third witness's description of a beating he received from another gang member for testifying at Mr. Maytubby's trial, and (5) this witness's statement that he would have avoided

-7-

testifying against Defendant if he could have.  Defendant also objects to the prosecutor's allusion to the last witness's testimony in asking an expert witness whether "a whiskey bottle to the face, giving you 15 stitches in your face," would send a message to a witness not to testify at trial.  (Tr. at 793.)

We conclude that any error in the prosecution's elicitation of the objected-to evidence was not plain and did not affect Defendant's substantial rights.  First, we hold that the government properly elicited testimony regarding the first witness's fear of retaliation to explain his prior inconsistent statements.  *See United States v. Rutledge*, 40 F.3d 879, 885 (7th Cir. 1994), *rev'd on other grounds*, 517 U.S. 292 (1996) (holding that trial court did not abuse discretion by admitting testimony of threats because this was "highly probative evidence explaining [the witness's] prior inconsistent statement").  As for the third witness's testimony, we note that the objected-to testimony was elicited on redirect examination after defense counsel engaged in a lengthy attempt to impugn the witness's credibility, suggesting that the witness would testify to whatever he thought would keep him out of trouble.  Evidence that the witness had experienced negative consequences for providing similar testimony at a previous trial and that he was reluctant to testify at Defendant's trial was relevant to rebut defense counsel's suggestion that his testimony was dependent on whatever he thought would provide him with the most benefit.  *See United States v. Santiago*, 46 F.3d 885, 891-92 (9th Cir. 1995) (holding that testimony relating

to witnesses' fear of retaliation was "permissible as a response to [defense counsel's] prior attempt to impugn their credibility" by arguing that they would lie to gain advantage for themselves). We also see no error in the prosecution's brief reference to this testimony during the expert witness's redirect examination, after defense counsel raised the issue of threats and witness retaliation on cross examination. As for the testimony of all of the witnesses that they were frightened to testify at Defendant's trial, based on the relatively limited nature of this testimony and the extensive admissible evidence presented to the jury regarding threats and violent behavior by Defendant and other gang members during the course of the conspiracy, we conclude that any error in the introduction of this testimony did not affect Defendant's substantial rights.[1]

Finally, Defendant objects to two related references to his prior state

---

[1] We reject Defendant's suggestion that we must find that his right to a fair trial was prejudiced based on a juror's stated concerns about Defendant having access to the jury list and the juror's related allusion to testimony about "significant repercussions." (Tr. at 858.) The court conducted a colloquy with this juror, in which the juror indicated that his concern was partly spurred by a question his wife, an avid Court TV watcher, had asked him in general about security precautions in federal cases. The juror further stated that he did not believe his impartiality had been affected by his concerns, that he had tried very hard not to form any opinions at this point in the case and did not believe he had, and that he was satisfied with the court's decision to shred the jury list. The district court was "comfortable with [the juror's] candor." (Tr. at 862.) Giving due deference to the juror's declaration of impartiality and the court's credibility determination that this declaration was sincere, *see United States v. Black*, 369 F.3d 1171, 1176 (10th Cir. 2004), we find no prejudice to Defendant's rights based on this incident.

misdemeanor convictions as felonies.[2]  First, the prosecution asked an expert witness a hypothetical question regarding the "likelihood of someone pleading guilty to three drug felonies, if they're not in fact guilty of those felonies."  (Tr. at 793.)  A few minutes later, the government's next witness, a federal agent, correctly testified that Defendant pled guilty to state charges of possession of cocaine, marijuana, and drug paraphernalia on July 6, 2005, but then incorrectly stated that all three counts were felonies.  However, defense counsel thoroughly questioned the agent regarding this error during cross examination, and the agent admitted she was unfamiliar with Oklahoma state law.  She agreed with defense counsel that the drug paraphernalia count was in fact a misdemeanor and indicated that the marijuana count might be as well.  "Where evidence refuting a false statement is revealed in cross-examination, the government cannot be said to have relied on the false direct-examination testimony to obtain a guilty verdict." *United States v. Crockett*, 435 F.3d 1305, 1317 (10th Cir. 2006).  Based on the agent's admissions during cross examination, we conclude that the earlier erroneous characterization of Defendant's misdemeanor convictions as felonies did not affect his substantial rights or undermine the fundamental fairness of his trial.

Therefore, we **AFFIRM** Defendant's conviction and sentence.

---

[2] Defendant does not object to the introduction of evidence of these prior convictions but only objects to their mischaracterization as felonies.