**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 7, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

ROSIE M. QUINN,

  Defendant - Appellant.

No. 11-3354
(D.C. No. 2:09-CR-20075-JWL-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Rosie M. Quinn, formerly an attorney licensed to practice law in Kansas,[1] appeals

from her conviction on seven counts of failing to "pay over" employment taxes (in

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

[1] Quinn was suspended from the practice of law in 2008, she was placed on disabled/inactive status in 2009, and her license was again suspended in 2011.

violation of 26 U.S.C. § 7202) and two counts of failing to pay individual income tax (in violation of 26 U.S.C. § 7203). Quinn's counsel identified no non-frivolous issues for appeal and filed an *Anders* brief.[2] The brief identified one possible, but likely unsuccessful, issue: whether the district court erred in denying her motion to dismiss the indictment's employment tax counts because, over a year after she was indicted, she paid the employment taxes due. Counsel subsequently filed a motion to withdraw.

At our invitation, Quinn filed an extensive objection to the *Anders* brief. It listed a number of additional arguments she thinks worthy of our consideration in this appeal.[3] The United States filed a brief responding to the issue identified by Quinn's counsel as well as many, though not all, of the issues in Quinn's objection to the *Anders* brief.

Because the record on appeal appeared to be deficient and Quinn had also made several arguments in support of her appeal which, at first blush, appeared to be arguable,[4] we denied the motion to withdraw and ordered her attorney to file a supplemental brief

---

[2] *See Anders v. California,* 386 U.S. 738 (1967).

[3] Quinn suggests her defense attorneys were constitutionally ineffective. We generally disfavor considering the effectiveness of trial counsel on direct appeal. *See United States v. Battles*, 745 F.3d 436, 457 (10th Cir. 2014). When raised on direct appeal, these claims "are presumptively dismissible, and virtually all will be dismissed." *Id*. (quotations omitted). Although a narrow exception exists "where the issue was raised before and ruled upon by the district court" and we have a sufficient factual record, the exception does not apply here. *Id*.

[4] Quinn's initial *pro se* objection to the *Anders* brief did not articulate the law in support of her arguments or cite the relevant sections of the record on appeal. These defects were cured in Quinn's supplemental brief and second amended supplemental brief.

addressing the arguments raised in her objection.  Since that time, the record has been supplemented, and Quinn has filed a 55-page supplementary brief and a 75-page second supplemental brief detailing her claims with citation to the record and the law.  Quinn's attorney has also responded, stating he fully reviewed the record for the third time, as well as Quinn's initial objection to the *Anders* Brief and her supplemental brief.  That said, he stands by his original position and asks us to reconsider the denial of his motion to withdraw.

Quinn's attorney claims to have engaged in "a diligent and thorough search of the record for any arguable claim that might support the client's appeal."  *Penson v. Ohio*, 488 U.S. 75, 83 (1988) (quotations omitted).  After our own thorough review of the record and all briefs, we conclude that the record is sufficient to determine whether the appeal is "so frivolous that it may be decided without an adversary presentation."  *Id.* at 82.  No further proceedings are necessary.[5]  We affirm the district court's rulings and grant Quinn's attorney's motion to withdraw.

## BACKGROUND

After nearly a decade of wrangling with the Internal Revenue Service (IRS) regarding payment of individual and employment taxes, Quinn's case was assigned to an IRS investigator in 2005.  On June 17, 2009, an indictment issued charging Quinn with

---

[5] We freely permitted Quinn to brief all issues she considered significant.  Her copious briefing identified any number of legal points, which we have considered.  Her arguments, while unsuccessful, were thoroughly and competently presented.  This is, indeed, a unique *Anders* case.  In the end it received a full adversary presentation.  Because it was thoroughly briefed, we affirm rather than dismiss the appeal as frivolous.

seven counts of failing to pay over employment taxes to the IRS (in violation of 26 U.S.C. § 7202) and two counts of failing to pay individual income tax (in violation of 26 U.S.C. § 7203). On December 4, 2010, Quinn paid the taxes owed under § 7202. Her payment[6] was followed by a motion to dismiss Counts 1-7 based on that payment. The district court denied her motion. A superseding indictment was issued on December 22, 2010, decreasing the amount owed under Counts 1-7 by the amount of her payment.

At trial, Quinn admitted to owing the taxes and not having paid them prior to the original indictment, but claimed she had never *willfully* refused to pay. Her defense was simple: she claimed not to know the failure to pay was a crime and she always intended to pay at some future time when she had the money to do so. She also claimed her gambling addiction prevented her from making a rational decision to refuse to pay. The issue at trial was whether she had willfully refused to pay the taxes she owed.

To counter her defense, the government introduced testimony from the string of IRS agents who dealt with Quinn over the years, as well as the IRS investigator. The testimony and documentary evidence established Quinn had met with IRS agents and had discussed her failure to pay. She was given opportunities to meet extended deadlines to clarify or refute the taxes, but did not do so. Instead, when final notices of tax deficiencies were issued, Quinn availed herself of all avenues to challenge the deficiencies in order to delay collection. Eventually, she filed bankruptcy to arrest the proceedings, but the bankruptcy was dismissed when she failed to prosecute the action.

---

[6] She did not pay the penalties and accrued interest.

- 4 -

There was also evidence of Quinn's efforts to conceal her assets. At the time she was aware of her delinquency, she allegedly purchased a lake-view home via her sister, who was used as a straw purchaser. Despite Quinn's claims she was merely paying her sister rent, bank documents revealed the down payment and majority of the mortgage payments were made shortly after the same amount of funds were taken directly from Quinn's law firm trust account. Her sister never lived in the home. In addition, when Quinn's law office building was to be sold for delinquent state taxes, her sister paid the back taxes and Quinn quitclaimed the property to her. As to Quinn's claim she was unable to pay the taxes, the government introduced pictures of two of her homes, evidence she paid her sister $9,000.00 per month (cash) to manage her law office, and paid $2,000.00 per month for life insurance policies on approximately ten of her nieces and nephews.

## DISCUSSION

A.    Sufficiency of the Indictment/Constructive Amendment

Quinn claims the amended indictment[7] failed to charge a criminal offense and, therefore, failed to confer subject matter jurisdiction on the court. The title to "Counts 1-7" stated "(Failure to Pay Over Employment Tax)" and the titles to Counts 8 and 9 stated, "(Failure to Pay Individual Income Tax)." Quinn contends the failure to include the word

---

[7] Quinn also points to failures in the original indictment, but the amended indictment is the operative document here.

"willful" in these titles is fatal because it is not a crime to merely fail to pay. It is only a willful failure to pay which is subject to criminal prosecution.

The sufficiency of an indictment is reviewed de novo. *United Sates v. Gama-Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000). It is true both criminal statutes contain the word "willful" in their titles. *See* 26 U.S.C. § 7202 ("Willful failure to collect or pay over tax") and § 7203 ("Willful failure to file return, supply information, or pay tax"). However, the sufficiency of an indictment is determined by applying "practical rather than technical considerations." *Gama-Bastidas*, 222 F.3d at 785 (quotations omitted).

We consider whether the indictment "sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *Id*. (quotations omitted). "The test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id*. (quotations omitted).

Quinn does not claim the superseding indictment did not contain the elements of the charges. The body of the charges clearly alleged she "willfully failed to pay over to the Internal Revenue Service the federal income taxes and Federal Insurance Contributions Act ("FICA") taxes she withheld from her employees' wages that were due and owing to the United States of America" in violation of 26 U.S.C. § 7202 and she "willfully failed" to pay her personal income tax in violation of 26 U.S.C. § 7203. Moreover, she acknowledges she understood the charge and could assert a double jeopardy defense. Her claim rests solely on the title of the charge in the indictment.

- 6 -

"If a defendant does not challenge an indictment until after a verdict or guilty plea, and if he does not assert prejudice, that is, if he had notice of the crime of which he stood accused, the indictment is to be read with maximum liberality." *Gama-Bastidas*, 222 F.3d at 786. An indictment is "sufficient unless it is so defective that by any reasonable construction, it fails to charge the offense for which the defendant is convicted." *Id.* Here, the grand jury's intent to charge criminal conduct is plainly stated on the face of the indictment, thus conferring subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) (reiterating subject matter jurisdiction concerns the courts' statutory or constitutional *power* to adjudicate the case). Because the superseding indictment sufficiently alleged her offense, Quinn's claim that the court constructively amended the indictment is also without merit.

B.      Statutory Interpretation of 26 U.S.C. § 7202

Quinn argues the court erred in denying her motion to dismiss Counts 1-7 because, once she paid the taxes, she was no longer in violation of the statute. "We review the district court's statutory interpretation de novo." *United States v. Rentz*, 735 F.3d 1245, 1248 (10th Cir. 2013). The statute reads:

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C. § 7202. As Quinn reminds us, the statute does not contain any reference to a due date as do other tax statutes, such as 26 U.S.C. § 7203.[8] In other words, she says, it does not specify a point in time when the offense becomes complete. Therefore, with singular focus, she tells us she could pay the taxes at any time before the verdict, thereby immunizing herself from continued prosecution.

The district judge disagreed, reasoning:

> Section 7202 criminalizes the willful "failure . . . to pay over" trust fund taxes. Under a common-sense reading, a "failure to pay over" necessarily incorporates the concept of a deadline, as the failure must be measured as of some particular time. *See Salt Lake City v. Western Area Power Admin.*, 926 F.2d 974, 984 (10th Cir. 1991) ("The most fundamental guide to statutory construction is common sense."). The most reasonable and logical point at which to note that a "failure" has already occurred is the point at or after the due date when the lack of payment has become willful.

(D. Ct. Docket, Case No. 09-CR-20075-JML, Memorandum and Order, # 75 at 3.)

In the absence of case law specifically on point, the judge noted how this Court and other circuits apparently accept the concept of a deadline in § 7202 when applying a statute of limitations found in 26 U.S.C. § 6531(4). Although those courts did not discuss

---

[8] 26 U.S.C. § 7203 states in relevant part:

> Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, *at the time or times required by law or regulations*, shall, in addition to other penalties provided by law, be guilty of a misdemeanor . . . .

(emphasis added).

- 8 -

the absence of an explicit due date in § 7202, their rulings necessarily included this section as an "offense of willfully failing to pay any tax, or make any return . . . at the time or times required by law or regulations," as required by the application of 26 U.S.C. § 6531(4). Thus, the judge concluded, this Court and other circuits have understood § 7202 to contain a deadline component.

We agree with the trial judge's sound reasoning and add an additional reason why Quinn's argument cannot succeed. She contends the statute does not, of itself, say when the crime is complete and argues a rule of lenity must apply to its interpretation. However, other than those crimes designated as continuing offenses, "[a] crime is complete as soon as every element in the crime occurs." *United States v. Reitmeyer*, 356 F.3d 1313, 1317 (10th Cir. 2004) (quoting *United States v. Payne*, 978 F.2d 1177, 1179 (10th Cir. 1992)). Once complete, the crime cannot be undone. Looking to the necessary elements of a violation of § 7202, (1) the defendant must be the person who is required to collect, account for, and pay the tax, (2) the tax has become due, and (3) the defendant willfully fails to submit the payments "required under this title."[9]

Quinn's myopia conveniently ignores her obligation to collect, account for, and pay employment taxes quarterly. *See United States v. Farr*, 536 F.3d 1174, 1176 (10th Cir. 2008) ("The Internal Revenue Code . . . requires 'employers' to deduct from their

_____

[9] The required payments consist of two parts, the employee's taxes and the employer's contribution. The employee's taxes must be withheld from the employee's pay and, on a quarterly basis, sent to the IRS. Quinn not only failed to pay her share, but withheld and kept for her own use the moneys deducted from the pay of her employees.

- 9 -

employees' wages the employees' share of FICA and individual income taxes. *See* U.S.C. § 3102(a), 3402(a). The employer is liable for the withheld portion of the employees' payroll taxes and must pay over the full amount to the government each quarter. *See* U.S.C. § 3403").

As the jury obviously found, Quinn willfully failed to pay over the money she held in trust for the government long before she made her payment. Once her non-payment was willful, her crime was complete. While the fact of a payment may have been relevant to the jury's consideration of her willfulness, it did not vitiate her completed crime. Quinn's remarkable proposition that an employer can ignore tax liabilities until just moments before the jury reaches a verdict staggers the imagination.

C.    Jury Instructions

Quinn claims the judge erred in failing to instruct on any of her three defense theories: (1) there was no requirement to pay the tax at any certain time and she paid them; (2) her gambling addiction prevented her from paying sooner; and (3) she had a good faith belief her actions were not criminal. Quinn acknowledges she did not object to the jury instructions and, therefore, we apply a plain error standard of review. To establish plain error, Quinn must show "(1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Williamson*, --- F.3d ---, No. 13-2023, 2014 WL 998409 *4 (10th Cir. Mar. 17, 2014) (quotations omitted).

Given our discussion above, Quinn's claims based on instructions, or lack thereof, regarding the defense of her last-minute payment are without merit.  Her claim the judge failed to correctly instruct the jury on her good faith defense is also without merit.

Jury Instruction No. 13 stated:

In every crime there must exist a union or joint operation of act and intent. The burden is always upon the government to prove both act and intent beyond a reasonable doubt.

An essential element of the crimes charged is that defendant must have acted willfully.  The word "willfully" means voluntarily and intentionally in violation of a known legal duty.  In other words, the defendant must have acted voluntarily and intentionally and with the specific intent to do something she knew the law prohibited, or fail to do something she knew the law required; that is to say, with intent either to disobey or disregard the law.

Conversely, the defendant did not act willfully if you find that she acted or failed to act because of negligence (even gross negligence), inadvertence, accident, mistake, reckless disregard for the requirements of the law, ignorance of the law, or a good-faith belief, based on a misunderstanding of the law, that she was not violating any of the provisions of the tax laws.

The question of intent is a matter for you, as jurors, to determine.  Intent is a state of mind, and since it is not possible to look into a person's mind to see what went on, the only way you have of arriving at the intent of a defendant is for you to take into consideration all of the facts and circumstances shown by the evidence, including the exhibits, and determine from all such facts and circumstances what the intent of the defendant was at the time in question.

(Dist. Ct. Docket, Case No. 09-CR-20075-JML, Jury Instructions, Doc. # 102 at 17-18.)

The court did not fail "to give any good faith defense instruction . . . which conveyed to the jury its meaning," as Quinn claims.  (Quinn's Pro Se Second Amended Objections to *Anders* Br. at 46.)  Nonetheless, she complains the instruction is flawed because:  (1) it "did not explain specific intent"; (2) it did not say the government had to

- 11 -

prove "Quinn had knowledge of the statutes she was charged with violating or the existence and terms of the statutes"; and (3) the instruction did not convey "that Quinn willfully and knowingly engaged in criminal behavior or that she intended to do something unlawful."[10] (*Id.*)  But Quinn's suggested improvements are incorrect.

"[A]s we have previously noted, instructing in terms of specific intent has been disfavored by the courts because of the confusing and ambiguous nature of such an instruction." *United States v. Winchell*, 129 F.3d 1093, 1096 (10th Cir. 1997) (quotations omitted).  We encourage instead, "instructions which adequately apprise the jury of the *mens rea* element of the offense, and which define each element of the offense clearly and accurately." *Id.* at 1097 (quotations and citation omitted).  The court need not give a separate specific intent instruction. *Id.*

Here, the court explained the specific intent contained in the tax statutes as it has been articulated by the Supreme Court; the standard for the statutory willfulness requirement is the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991) (quoting *United States v. Bishop*, 412 U.S. 346, 360 (1973) and *United States v. Pomponio*, 429 U.S. 10, 12 (1976)).  Quinn's assertion that "willfulness requires proof that the defendant actually knew of the specific

---

[10] Quinn finds the court's failure to give a theory of defense instruction on her pathological gambling "particularly troubling" because evidence of gambling tends to be prejudicial.  Quinn does not explain what sort of instruction would have been appropriate in this case and our own research has found no case law illuminating this proposition.

provisions . . . [she] is charged with violating" is incorrect.[11]  (Quinn's Pro Se Second Amended Objections to *Anders* Br. at 45.)  "[T]he jury [is] free to consider any admissible evidence from any source showing that [she] was aware of [her] *duty*" under the law to pay over delinquent taxes.  *Cheek*, 498 U.S. at 611.  While this may include "evidence showing [her] awareness of the relevant provisions of the Code or regulations, of court decisions . . ., of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions" which inform her legal duty, she need not know the exact provision she is violating.  *Id*. "Knowledge of the law's demands does not depend on knowing the citation any more than ability to watch a program on TV depends on knowing the frequency on which the signal is broadcast."  *United States v. Cavins*, 543 F.3d 456, 459 (8th Cir. 2008) (quoting *United States v. Patridge,* 507 F.3d 1092, 1094 (7th Cir. 2007)).  "In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue . . . ."  *Cheek*, 498 U.S. at 611.  The instructions at trial thoroughly and correctly informed the jury of the government's burden and Quinn's theory of defense.  In any event, she admitted knowing she had a legal duty to timely pay her taxes and did nothing to comply until indicted.

---

[11] We note, after carefully reading Quinn's arguments, she may be suffering under a mistaken belief as to the extent of the knowledge necessary for conviction.  She repeatedly states she did not know she was engaging in "criminal" conduct.  Ignorance of a legal duty is a defense, but the fact the defendant "was not aware of the criminal penalties" is not.  *United States v. Rosenfeld*, 469 F.2d 598, 600 n. 1, 601 (3d Cir. 1972).

Quinn also claims the court erred when it failed to give a limiting instruction regarding the summaries of her bank account activity. Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Quinn did not object to the use of summaries at trial and does not do so now. Instead, she claims the court erred when it failed to give a limiting instruction as to the import of the summaries, despite the absence of any request for the court to do so.[12] Again, we review for plain error and find no error here. Quinn does not claim she was unaware of the summaries, which were based on record exhibits; the preparers of the summaries were subjected to extensive cross examination at trial; and Quinn fails to

---

[12] For example, in *United States v. Thomas* 518 F.3d 832, 859 (10th Cir. 2008), the court gave the following instruction:

> Charts or summaries have been prepared by the government and shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, and other documents which are in evidence in the case. Such charts or summaries are not evidence in this trial or proof of any fact. If you find that these charts or summaries [do] not correctly reflect facts or figures shown by the evidence in the case, the jury should disregard the charts or summaries.
>
> In other words, such charts or summaries are used only as a matter of convenience for you and to the extent that you find they are not, in truth, accurate summaries of facts or figures shown by the evidence in the case, you can disregard them entirely.

allege how she was prejudiced by the lack of instruction.[13]  *See United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013) (affirming district court's admission of charts and summaries even though no limiting instruction was given), *cert. denied*, 134 S. Ct. 969 (2014).

D.    Sufficiency of the Evidence

Quinn contends the evidence was insufficient to show she voluntarily and intentionally violated a known legal duty.  "We review this issue de novo to determine whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt."  *United States v. Doddles*, 539 F.3d 1291, 1293 (10th Cir. 2008) (quotations omitted).  Any possible conflicts in the evidence are resolved in favor of the government and we "assume . . . the jury found that evidence credible."  *Id.* at 1293-94.  "While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt."  *United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008) (quotations omitted).

The trial judge denied Quinn's post-trial motion for judgment of acquittal based on the insufficiency of the evidence:

Defendant, an attorney, conceded in her testimony that she knew she had a

---

[13] To the extent Quinn argues her attorney did not adequately cross-examine the witnesses so the jury could fairly understand the complete picture, the effectiveness of counsel is not at issue on direct appeal.

duty to pay over the employment taxes and to pay income taxes by certain deadlines, and she in fact filed tax returns and forms without the accompanying payments. The jury could reasonably infer from the evidence of defendant's dealings with the IRS that she was attempting to put off having to pay for as long as she could. The jury also heard evidence, including evidence of her gambling and the expensive homes in which she lived, that defendant had access to significant funds that she could have paid to the IRS. The Government also presented evidence suggesting that defendant purchased one home in her sister's name, and the jury could reasonably infer that defendant was attempting to hide her assets from the IRS. At trial, defendant relied on her testimony that she had a gambling addiction, but the jury was free either not to believe that testimony or to conclude that she acted willfully despite the addiction.

The Court concludes that from the evidence, the jury could reasonably have found beyond a reasonable doubt that defendant voluntarily and intentionally failed to pay the IRS when she knew such payments were required by law, and thus that she acted willfully. Accordingly, the Court denies defendant's motions for a judgment of acquittal.

(Dist. Ct. Docket, Case No. 09-CR-20075-JML, Memorandum and Order, # 128 at 4.)

Careful review of the entire record and Quinn's arguments reveal the district judge's conclusion to be unassailable.

E.      Admission of Evidence

Quinn claims the district judge erred in admitting evidence which did not directly negate her three specific defenses enumerated above. We review the district court's evidentiary rulings, upon objection, for abuse of discretion. *United States v. Becker,* 230 F.3d 1224, 1228 (10th Cir. 2000). If no contemporaneous objection was made at trial, we review for plain error. *United States v. Romero,* 491 F.3d 1173, 1178 (10th Cir. 2007). Federal Rules of Evidence Rule 402 states relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. Under Rule 403,

- 16 -

however, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Quinn argues the photographs of her residences were inadmissible because her "problems paying her taxes began at least 10 years before she lived in either of the houses." (Quinn's Pro Se Second Amended Objections to *Anders* Br. at 55.) But the fact she lived in expensive homes at the same time she said she did not pay taxes because she could not afford to pay is relevant to whether her failure to pay was willful and this evidence was not unfairly prejudicial. Quinn also claims her prior tax liability was inadmissible under Fed. R. Evid. 404(b) because her tax liability for years other than those charged in the indictment did not relate to any of the proper purposes for admission. Evidence showing her knowledge of ongoing tax liability, to which she was able to respond with an acute knowledge of rules and regulations regarding her rights to contest and forestall that liability, as well as her attempts to conceal assets, is certainly relevant to an "absence of mistake" regarding her legal duty to pay taxes.

F.    Prosecutorial Misconduct

Quinn maintains the prosecution presented false and deceptive evidence denying her a fair trial. Specifically, she claims: (1) the government's exhibits were incomplete or misleading; (2) government witnesses testified in a manner that contradicted the documentary evidence; (3) one government witness failed to admit he knew Quinn had gambling problems and the extent of that problem; (4) the "red flags" in account activity leading to the investigation were not actually fraudulent; and (5) the prosecutor

- 17 -

improperly elicited testimony regarding her credibility and the commission of other tax crimes.

We review the trial court's decision to grant or deny a motion for a new trial under an abuse of discretion standard, viewing the evidence in the light most favorable to the prevailing party. *Tanberg v. Sholtis*, 401 F.3d 1151, 1160 (10th Cir. 2005). Our review of the record confirms the propriety of the district judge's acts; he considered these arguments and correctly denied her motion for a new trial. Quinn's appellate arguments continue to mischaracterize portions of the record and reach unfounded conclusions of prosecutorial wrongdoing. These claims are without merit.[14]

G.    Sentencing

The sentencing judge declined to apply enhancements, denied Quinn's requests for several downward departures or a downward variance, and applied the mid-range level of imprisonment—36 months—suggested under the guidelines. Quinn now claims he procedurally and substantively[15] erred in denying her a reduction for acceptance of responsibility, USSG §3E1.1, and denying a downward departure under USSG §5H1.3 (mental and emotional conditions) or §5K2.13 (diminished capacity).

---

[14] Quinn also claims the district court erroneously allowed Agent Nguyen to testify as an expert witness and allowed testimony outside his role as an expert. Agent Nguyen did not testify as an expert.

[15] Quinn does not support her substantive error claim with argument or legal citation.

1.      Acceptance of Responsibility

Sentencing guidelines §3E1.1(a) permits a two-level downward adjustment "[i]f the defendant clearly demonstrates acceptance of responsibility for [her] offense." USSG §3E1.1(a). Quinn "bore the burden of proving her entitlement to an acceptance-of-responsibility adjustment by a preponderance of the evidence." *Battles*, 745 F.3d at 458. We "reverse on this basis only for clear error, which means that on the entire evidence we are left with the definite and firm conviction that a mistake has been committed." *Id*. (citations and quotations omitted).

Quinn claims she had always admitted her duty to pay taxes but had not paid. Thus, according to her, the district judge erred in concluding her failure to admit she acted willfully precluded the application of the acceptance of responsibility reduction. Her conveniently contrived argument is simply wrong.

The judge determined Quinn "has never admitted that she acted willfully, and that is an issue that is tied up with the facts that were contested at the trial of the case. Thus, there's no basis for application of this reduction here." (R. Vol. 2 at 915 (citing *United States v. Bailey*, 327 F.3d 1131, 1148 (10th Cir. 2003) (affirming denial of reduction where defendant challenged at trial the factual issue of intent to defraud), and *United States v. Day*, 223 F.3d 1225, 1230-31 (10th Cir. 2000) (affirming denial of reduction where, although defendant did not deny committing the acts, he never admitted his culpability for those acts).) We have previously determined the "rare situation where a defendant goes to trial but nonetheless receives a §3E1.1 adjustment does not

contemplate a defendant's challenge to the factual element of intent." *Battles*, 745 F.3d 459 (quotations omitted). This claim is without merit.

2. Diminished Mental Capacity

Quinn requested a downward departure and/or variance based on her diminished mental capacity. She claimed her severe depression caused her gambling problem which, in turn, blinded her to her legal responsibilities. According to Quinn, her pathological gambling, caused by her severe depression, prevented her from controlling her behavior to conform to the law.

Several inter-related guideline provisions address the court's consideration of a downward departure due to mental and emotional conditions and diminished capacity. *See United States v. Sheehan*, 371 F.3d 1213, 1216 (10th Cir. 2004). Section 5H1.3 of the guidelines advises: "Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)." The last sentence found in USSG §5H1.4 states, "[a]ddiction to gambling is not a reason for a downward departure."

Similarly, §5K2.0 states in relevant part: "[A]n offender characteristic . . . that is . . . not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines." Section 5K2.0(d) adds, "Prohibited Departures.—Nothwithstanding . . . any other provision in the guidelines, the court may

not depart from the applicable guideline range based on . . . . the last sentence of 5H1.4.").

However, the last provision addresses diminished capacity, separate and apart from the existence of a mental or emotional condition.  Section 5K2.13 provides:

> **§ 5K2.13.** *Diminished Capacity* (Policy Statement):
>
> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense.  Similarly, if a departure is warranted, . . . the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public . . . .

We have recognized downward "departures pursuant to § 5K2.13 are a subset of departures allowed under § 5H1.3 based on mental and emotional conditions.  While other departure requests based on mental and emotional conditions may be governed by § 5K2.0, diminished capacity claims are governed solely by § 5K2.13."  *Sheehan*, 371 F.3d 1218.  Quinn acknowledges a request for departure specifically based on §5K2.13 was not presented to the district judge.

Even so, Quinn argues the judge did not appreciate the difference between her gambling as a mental or emotional condition and her diminished capacity due to her gambling caused by depression.  Quinn says she submitted psychiatric reports stating she

suffered major depression causing her gambling addiction, and that "her pathological

gambling significantly reduced her mental capacity to control her behavior so her taxes

would be paid according to law." (Quinn's Pro Se Second Amended Objections to

*Anders* Br. at 72 (quotations omitted).) She argues, based on this evidence, the judge

erred in finding she was not entitled to a departure under USSG §5K2.13. We disagree.

The judge properly recognized a departure was unwarranted solely due to her

gambling under the sections dealing with her mental and emotional condition. However,

he also determined:

> [A]lthough Dr. Logan diagnosed chronic depression, most of his testimony concerned his diagnosis of a gambling disorder. He did not testify at trial that her depression had any effect on her ability to conform with the law or to pay her taxes. . . . Her other conduct certainly indicated that she was able to deal with most of her responsibilities in her life, as she carried on a successful law practice, she acquired property, [and] she functioned in society. The one thing she didn't seem to be able to do was to pay her taxes. I think my conclusion from the totality of the evidence that I observed was that she didn't pay the taxes because she preferred to use that money for something else than paying taxes. That may have been to feed a gambling addiction; it may have been for other reasons. But I don't think it was because she had some chronic depression that caused her not to be able to cope with the responsibilities of her life, so I do not find that she has shown that she suffered from depression to an [un]usual degree so as to distinguish her case from typical cases governed by the guidelines, nor do I think that under Section 3553 her depression, which undoubtedly arises from a particularly traumatic background of her youth or her gambling addiction, are such unusual circumstances in this court's experience in seeing offenders before it as to justify some lower offense. . . .
>
> [A]lthough Ms. Quinn has herself had some bad things happen in her life, again I come back to the fact that she was perfectly able to cope with her other responsibilities here, and she was not so able to cope with her taxpaying responsibilities, and I derive the conclusion that it was willful on her part, that she thought as long as she could get away with not paying those taxes -- and she may well have believed that there wasn't criminal responsibility for it, although she wasn't required to know that under the

law.  She may have thought she was getting an interest-free loan from the government for as long as she could keep that money and not have them collect it from her, as they attempted to do by -- or as she may have attempted to prevent them from doing by the conduct that she engaged in. So I find no basis to either depart or vary as a result of her particular circumstances of depression or gambling.

(R. Vol. 2 at 923-25.)

In other words, the judge determined Section §5K2.13 allows a downward departure if the offense was committed while suffering from a significantly reduced mental capacity which "contributed substantially to the commission of the offense." *See United States v. Sadolsky*, 234 F.3d 938, 942-43 (6th Cir. 2000) (affirming the application of §5K2.13 based on a gambling addiction).  The judge did not refuse to depart based on misunderstanding that her gambling addiction and depression could not be considered under a diminished capacity departure.  Rather, he found neither her severe depression nor her gambling addiction to have contributed substantially to the commission of the offense.  As he noted, despite Quinn's mental condition, she managed to maintain herself and her family in a comfortable lifestyle, run a profitable legal practice, pay life insurance premiums for numerous relatives, and pay her sister, a non-lawyer, $9,000.00 per month in cash to manage Quinn's law office.  In other words, the judge was right:  Quinn willfully refused to meet her legal duty because "she preferred to use that money for something else than paying taxes."  His conclusion is fully supported by the record and well within his discretion.

AFFIRMED. Quinn's motion to consider her second supplemental objection to the *Anders* brief and defense counsel's motion to withdraw are GRANTED. Quinn's remaining motions are denied as moot.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge