**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1144
_____

UNITED STATES OF AMERICA

v.

STEVEN J. LYNCH,

Appellant
_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(D.C. No. 2:14-cr-00181-001)
District Judge:  Hon. Arthur J. Schwab

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 8, 2018

Before:  CHAGARES, SCIRICA, and RENDELL, Circuit Judges

(Filed: May 29, 2018)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Appellant Steven Lynch appeals from his conviction after a jury trial for tax evasion in violation of 26 U.S.C. § 7202. Lynch raises a profusion of claims challenging nearly every aspect of the trial, including that (1) much of the evidence was inadmissible, (2) his Confrontation Clause rights were violated, (3) the Government failed to prove that Lynch violated § 7202; (4) the Government engaged in prosecutorial misconduct; (5) the District Court's jury instructions were erroneous; (6) the Government withheld evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963); and (7) the District Court's sentence was improper. Because these arguments lack merit, we will affirm.

I.

We write for the parties and so recount only the facts necessary to our decision. Since 2001, Lynch — along with his minority partners — owned and operated the Iceoplex at Southpointe LLC, a facility that included an ice skating rink, indoor field, health club, and sports bar (collectively "Iceoplex"). The Iceoplex originally leased the space for the sports bar, Jay's Sports Bar and Grill, but Lynch and two partners acquired Jay's in 2006. Lynch also owned Alder Street Management, which operated out of the Iceoplex offices. In his capacity as either president or treasurer of these entities, Lynch had near-total authority over financial decisions. Significantly, Lynch exclusively prepared, signed, and filed with the IRS the entities' quarterly employment tax returns. Lynch was accordingly the "responsible person" for collecting and paying the entities' "trust fund" taxes, meaning that he had the duty to withhold income, Social Security, and Medicare taxes from the entities' employees and to pay them to the IRS. Although the

2

entities withheld these taxes, starting in 2003 they failed timely to remit them to the IRS. At times during the over decade-long period during which the entities failed to pay over their trust fund taxes, Lynch directed the payment of wages to the entities' employees through shell companies, including SRA Services LLC and SRA Employee Services LLC.

In July 2014, Lynch was indicted on ten counts of willfully failing to pay over taxes withheld from the wages of employees paid through SRA Services and SRA Employee Services during the quarters ending in 2008–2010, in violation of 26 U.S.C. § 7202. In December 2015, a superseding indictment was issued charging eighteen additional counts of willfully failing to pay over withheld taxes paid through SRA Employee Services, the Iceoplex at Southpointe, LLC, Alder Street Management Company, and Jay's Sports Bar and Restaurant, Inc., during the quarters ending in 2011–2015. A jury convicted Lynch of 16 counts, consisting of all the § 7202 charges from the second quarter of 2012 and later, save the second quarter of 2014 relating to Alder Street Management. At sentencing, the District Court, considering uncharged and acquitted conduct, determined that Lynch's scheme resulted in a tax loss of $2,885,898, yielding a base offense level of 22 and a United States Sentencing Guidelines range of 41 to 51 months of imprisonment. The District Court sentenced Lynch to 48 months of imprisonment followed by 36 months of supervised release and ordered him to pay restitution of $793,145 (relating to the tax loss from the quarters for which Lynch was convicted), a $75,000 fine, and a $1,600 special assessment. Lynch timely appealed.

3

## II.[1]

### A.

Lynch challenges the admissibility of the summary charts that the Government introduced into evidence, asserting that they relied on inadmissible underlying documents, were not accompanied by the testimony of the individual who prepared them in the first instance, were improperly admitted through a lay witness, and were inaccurate. As explained below, these contentions are meritless.[2]

Federal Rule of Evidence 1006 permits a party to "use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court," where the summary would be helpful to the jury. See United States v. Bansal, 663 F.3d 634, 668 (3d Cir. 2011). Rule 1006 summaries are admissible only if they rely upon admissible materials, United States v. Pelullo, 964 F.2d 193, 204 (3d Cir. 1992), and must be supported by a foundation showing that the exhibit is an accurate summary of the underlying materials, Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 301 (3d Cir. 1961). Testimony concerning the "authenticity and accuracy" of a summary may be provided by a person who supervised its preparation or carefully reviewed its content. United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979).

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[2] We review de novo the District Court's interpretation of the Federal Rules of Evidence, but assess for abuse of discretion its decisions concerning the admissibility of evidence. United States v. Serafini, 233 F.3d 758, 768 n.14 (3d Cir. 2000).

1.

Lynch argues that the underlying IRS and bank records — which he admits qualify as business records for the purpose of Rule 803(6)'s hearsay exception — were never authenticated and thus could not serve as the basis for the summaries. At the start of trial, however, Lynch consented to the documents' admission into evidence. Lynch cannot now complain that the Government did not thereafter waste its argument time reestablishing the foundation of already admitted documents.

2.

The Government's summary exhibits were compiled by IRS agent Paul Bauer over the course of his investigation. In presenting its summary exhibits under Rule 1006, however, the Government offered a different IRS agent (Agent Lisa Gapsky), whom Lynch asserts was unfamiliar with the reasons for why certain information was or was not included in the summaries. Lynch argues that Rule 1006 requires that the summary preparer be made available to testify. Rule 1006 contains no such requirement. Gapsky verified every data entry back to its underlying document and confirmed that the formulas were operating correctly in the charts, which was sufficient to establish that the summaries were accurate. See Scales, 594 F.2d at 563. Nor did Gapsky need to be an expert in order to introduce the summaries, as no special expertise beyond that which is expected of an IRS agent was needed to accomplish this task. See Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1201 (3d Cir. 1995).

3.

Lynch next challenges the accuracy of Exhibit G-94, which identifies the net withdrawals from six Lynch-controlled bank accounts. To ensure that the chart captured only expenditures going to third parties, it cross-referenced each payment against the other five accounts, to see if the payment was just a reshuffling of assets. On cross-examination, Lynch identified other related accounts that were not included in the chart. The District Court denied Lynch's request to reject the exhibit, explaining that Gapsky had sufficiently shown that the exhibit accurately summarized the six documents and that the jury could determine how much credibility to accord the summary.

A Rule 1006 summary chart need not accurately reflect all the facts in the case; it merely must accurately represent the facts that it purports to summarize. "So long as they are accurate, however, such summaries may present only one party's side of the case." 2 McCormick on Evid. § 241 (7th ed.). The fact that G-94 did not include all the related accounts does not undermine its admissibility because it accurately reflected the accounts it did include. It was up to Lynch, on cross-examination, to show the jury that there was more to the story, and he effectively did so. See, e.g., United States v. Nivica, 887 F.2d 1110, 1125–26 (1st Cir. 1989) (concluding that summaries' failure to reflect "total financial activity" "affect[s] . . . weight rather than the admissibility" and that "if there were gaps in the charts, the defense . . . had every opportunity to exploit them").

B.

Lynch argues next that his confrontation rights were violated when the Government was permitted to present the summaries based on Gapsky's testimony,

without making Agent Bauer available for testimony. Lynch did not raise this issue with the District Court, so we review for plain error. See United States v. Lopez, 650 F.3d 952, 959 (3d Cir. 2011). "Plain error exists only when (1) an error was committed (2) that was plain, and (3) that affected the defendant's substantial rights." Id. (quoting United States v. Lessner, 498 F.3d 185, 192 (3d Cir. 2007)). A "plain" error is one that is "clear" or "obvious." United States v. Olano, 507 U.S. 725, 734 (1993). Even upon finding a plain error, a court of appeals has discretion whether to grant relief and "should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 736 (alteration in original) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." A witness is any individual who bears testimony against the defendant, and such testimony can be contained in any functional equivalent of in-court testimony. See Crawford v. Washington, 541 U.S. 36, 51 (2004). To fall within the ambit of the Confrontation Clause, then, a proposed exhibit must constitute an out-of-court statement containing testimonial hearsay, meaning that it was "a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact;' and . . . was made primarily for the purpose of 'prov[ing] past events potentially relevant to later criminal prosecution.'" United States v. Stimler, 864 F.3d 253, 272 (3d Cir. 2017) (footnote omitted) (first quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310 (2009); then quoting Michigan v. Bryant, 562 U.S. 344, 361 (2011)). Lynch asserts that the

7

summaries — documents created out of court and in anticipation of the trial, introduced for the purposes of proving a fact — constitute testimonial hearsay and must be testified to by Agent Bauer.[3]

The resolution of this issue turns on the fact-specific question of whether the summary document itself was a testimonial statement; that is, whether it simply consolidated data from other admissible documents and ran basic calculations on that data, or whether instead it was based on the preparer's own assumptions and subjective choices about what data is relevant.[4]  In this Circuit, a district court's finding that the exhibits qualified under Rule 1006 is itself a determination that they are not infected with the preparer's own subjective views.  Prior to permitting the use of a summary document under Rule 1006, the district court must assure that "the summation accurately summarizes the materials involved by not referring to information not contained in the original."  Pritchard, 295 F.2d at 300–01; see also Eichorn v. AT&T Corp., 484 F.3d 644, 650 (3d Cir. 2007).  The District Court's Rule 1006 finding would tend to indicate that the summary documents were not independent statements or conclusions concerning the data in the original documents.

_____

[3] The IRS and bank records that underlie the summaries are non-testimonial and so on their own do not trigger the Confrontation Clause.  Crawford, 541 U.S. at 56.

[4] Indeed, two of our sister courts have concluded that a summary that merely consolidates or reformulates the underlying evidence cannot be considered a statement in its own right, and so does not fall within the ambit of Confrontation Clause.  See, e.g., United States v. Davis, 531 F. App'x 65, 69 (2d Cir. 2013) (concluding that edited video footage was not testimonial because "the act of editing the video is not an out-of-court statement at all"); United States v. Keck, 643 F.3d 789, 796 (10th Cir. 2011) (holding that copying information from underlying non-testimonial records does "not constitute a Confrontation Clause violation").

We need not, however, firmly conclude whether the summaries here fell on the wrong side of the subjectivity line because the resolution of that issue turns on factual determinations about which reasonable minds could differ. Under plain error review, it is certainly not clear that Lynch's Confrontation Clause right was violated by allowing Gapsky to testify to exhibits that were not obviously statements in their own right. Accordingly, we deny Lynch's claim.

C.

Lynch next argues that the Government failed to prove beyond a reasonable doubt the elements that Lynch asserts are required to find him guilty under § 7202. We disagree. Challenges to the sufficiency of the evidence are assessed by viewing "the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration in original) (quoting United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)).

1.

Section 7202 provides that "[a]ny person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall . . . be guilty of a felony." 26 U.S.C § 7202. Accordingly, the Government must prove beyond a reasonable doubt that (1) Lynch was a person required to "collect, account for, and pay over" the firms' employment taxes, (2) he failed to do so, and (3) that failure was willful. Whether an individual is a "responsible person" required to pay over the withheld taxes "is a matter

9

of status, duty, or authority, not knowledge." Greenberg v. United States, 46 F.3d 239, 243 (3d Cir. 1994) (quoting Brounstein v. United States, 979 F.2d 952, 954 (3d Cir. 1992)).[5] In reaching this determination, we have considered the following factors:

> (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

Id. (quoting Brounstein, 979 F.2d at 954–55). There is no requirement that the defendant meet all these factors in order to be deemed a responsible person. See, e.g., United States v. DeMuro, 677 F.3d 550, 559, 566 (3d Cir. 2012) (considering only four factors).

"Willfulness in a tax evasion case is 'a voluntary, intentional violation of a known legal duty.'" Id. at 557 (quoting Cheek v. United States, 498 U.S. 192, 201 (1991)). Thus, if a defendant can show "that he had a good faith belief that he was not violating the tax code, regardless of whether that belief was objectively reasonable, he has established that he did not act willfully." Id. The burden remains on the Government to disprove the defendant's good faith. Cheek, 498 U.S. at 202.

## 2.

Lynch first claims that he is not a "person" under Title 26 because that term is limited to the definition included in § 7343, which does not include an "individual." We

---

[5] The Court in Greenberg dealt with 26 U.S.C § 6672 — the civil corollary to § 7202 — but the relevant language of the two statutes is nearly identical, see Slodov v. United States, 436 U.S. 238, 245 (1978) ("[Section] 7202 . . . tracks the wording of § 6672 . . . ."), and this Court has applied the test set out in Greenberg to § 7202, see United States v. DeMuro, 677 F.3d 550, 559 (3d Cir. 2012).

10

have explicitly rejected this argument as frivolous. United States v. Karlin, 785 F.2d 90, 91 (3d Cir. 1986) (discussing § 7203, which mirrors § 7202's language); see also United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) (rejecting as "inane" defendant's argument "that 26 U.S.C. § 7343 defining 'person' does not include natural persons"). Because Lynch is "an individual," 26 U.S.C. § 7701, he is a person under Title 26.

3.

Much of Lynch's argument that the Government failed to show that he was a responsible person relies on his baseless contention that the IRS filings and bank records were improperly admitted into evidence. Those documents clearly showed that Iceoplex and Alder Street owed a substantial amount of trust fund taxes during the indictment period, that Lynch had signature authority over 40 of the 50 bank accounts associated with the entities, and exclusively signed and filed quarterly tax returns for SRA Employee Services (as Treasurer) and Alder Street, Iceoplex, and Jay's (as President). Other evidence at trial overwhelmingly showed that Lynch had near-total control over the entities' finances. This included testimony that Lynch admitted that he determined financial policy. This is substantial evidence that a rational trier of fact could have relied upon to establish proof of control beyond a reasonable doubt.

4.

Lynch argues that § 7202 does not contain within it any language specifying a due date and so argues that his late payments do not alone suffice to establish that he failed to pay over the taxes. This argument fails on its face. Section 7202 applies to taxes "imposed by this title," and § 6151 makes clear that "when a return of tax is required

11

under this title or regulations, the person required to make such return . . . shall pay such tax at the time and place fixed for filing the return." See, e.g., United States v. Quinn, No. 09-cv20075 (JWL), 2011 WL 382369, at *1 (D. Kan. Feb. 3, 2011) ("[A] 'failure to pay over' necessarily incorporates the concept of a deadline, as the failure must be measured as of some particular time."), aff'd, 566 F. App'x 659 (10th Cir. 2014). Thus, where a payment is late, the responsible person has by definition failed to pay it over and if that failure was willful, that person has violated § 7202.

5.

Ample evidence also existed to allow the jury to conclude beyond a reasonable doubt that Lynch's failure to pay over the taxes when due was not in good faith, but instead was a willful attempt to avoid paying as much of the amount owed as possible. This included evidence that Lynch: was repeatedly told by the IRS that the entities' employment taxes were unpaid and that failure to pay subjected him to criminal liability, paid off a substantial portion of unpaid taxes the day after hearing he was the subject of a grand jury investigation, shifted payment structures and maintained low account balances to avoid IRS levies, and directed payments to employees, creditors, and himself while failing to pay the overdue trust fund taxes. See, e.g., DeMuro, 677 F.3d at 558–59 (noting evidence of spending while taxes are due "belies [defendants'] assertions that they were sincerely attempting to pay their back taxes as expeditiously as possible"); United States v. McKee, 506 F.3d 225, 248–49 (3d Cir. 2007) (explaining that evidence that "a defendant became aware of the tax improprieties inherent in [his] conduct" shows willfulness); see also, e.g., United States v. Boisseau, 841 F.3d 1122, 1127 (10th Cir.

12

2016) (finding evidence of willfulness where defendant "alter[ed] the method of compensation to defeat a levy"). This was more than sufficient evidence to support the jury's finding of willfulness beyond a reasonable doubt.

## III.

Lynch next asserts that the Government engaged in various forms of misconduct throughout the trial. A prosecutor's comments may rise to a constitutional violation where "in context and in light of the entire trial," Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001), they "so infected the trial with unfairness as to make the resulting conviction a denial of due process," Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Because Lynch did not raise a prosecutorial misconduct claim below, we review for plain error.

## A.

Lynch alleges that although he is not an "employer" so does not personally owe taxes or employ employees, the Government made statements implying that Lynch personally owed taxes or employed people. However, as a "responsible person," Lynch — although not the employer — was responsible for the collection and payment of the trust fund taxes. It was no misrepresentation for the Government to argue that Lynch had a duty to pay these taxes or that he failed to do so. Likewise, because Lynch was a controlling owner, it is perhaps inaccurate, but not misleading or unfair, to describe the entities' employees as Lynch's employees. See Rolan v. Coleman, 680 F.3d 311, 325 (3d Cir. 2012). Nor did the Government argue to the jury that Lynch was the employer. It argued, and the evidence conclusively shows, that Lynch was the responsible person. In

13

context, any misleading comments did not render the trial unfair. Lynch cannot show plain error because the statements did not affect his substantial rights.

## B.

Lynch also contends that his Fifth Amendment right against self-incrimination was violated when Special Agent Lauth, a Government witness, testified that after telling Lynch that he was the subject of a Grand Jury investigation, Lynch replied that he did not want to talk and wanted an attorney. Lynch argues that this revelation implied to the jury that he was guilty. Lynch did not object at trial, and his claim fails.

The Government did not intentionally elicit this testimony. Rather, the record reflects that the Government presented Agent Lauth as a witness for the purpose of showing only that Lynch was informed that he was the subject of the Grand Jury investigation, but that Lauth gave a narrative answer. The Government asked no follow-up questions, and although it discussed Lauth's testimony during its summation, did not mention Lynch's refusal to talk or request for counsel. In any event, Lynch again cannot show that the error was plain or that it affected his substantial rights.

## IV.

Lynch next challenges that the District Court's jury instructions improperly: (1) defined "person" to include an individual, (2) read a due date into § 7202, (3) did not require the Government to prove that Lynch was under a legal duty to pay over the taxes; (4) did not require the Government to affirmatively disprove the absence of good faith; and (5) permitted the jury to find that Lynch was a "responsible person" if he had the "authority required to exercise significant control . . . regardless of whether that

14

individual exercises such control in fact." Appendix ("App.") 1255. "We review the legal accuracy of a district court's jury instructions de novo. Absent an affirmative misstatement of the applicable law, our review is for an abuse of discretion." United States v. Maury, 695 F.3d 227, 261 (3d Cir. 2012) (citation omitted). Where the claim was not raised below, we review for plain error. United States v. Xavier, 2 F.3d 1281, 1287 (3d Cir. 1993).

As we have explained, Lynch's first two contentions are meritless. His third contention fails, too, because the District Court properly instructed the jury on the Government's burden. See App. 1250.

His fourth claim was not raised below and is unavailing. The Government bears the burden of proving willfulness and so its failure to negate a good faith defense amounts to a failure to prove that the defendant knew of, and intentionally violated, his duty to pay taxes. These are not two separate elements that the Government must prove, but two sides of the same coin. See Cheek, 498 U.S. at 201–02 (identifying the Government's burden to prove willfulness, then noting that "carrying this burden" requires that the Government disprove the defendant's good faith, because such a claim is inconsistent with willfulness). The District Court's instructions adequately stated this standard.

His fifth claim fares no better. He argues, again for the first time on appeal, that this Court requires a finding of an actual exercise of significant control to be held liable as a responsible person. But we have held that whether someone is a responsible person "is a matter of status, duty, or authority," Greenberg, 46 F.3d at 243 (quoting Brounstein,

15

979 F.2d at 954), and a number of the factors that we consider depend on authority or status, not action, see id. (considering contents of bylaws, ability to sign checks, identity of officers, identity of individuals with power to hire or discharge, and identity of individual in charge of finances). The instruction was not plainly erroneous and given the substantial evidence of Lynch's exclusive control over the entities' finances, any error did not affect substantial rights.

## V.

Lynch's penultimate claim is that the prosecution violated Brady by failing to turn over the Special Agent Report ("SAR") authored by Agent Bauer, who did not testify at trial. Lynch asserts his belief that the report contains favorable evidence "that would have bolstered Appellant's good faith defense, impeachment evidence that would have been valuable to impeach the testimony of the government's witnesses and evidence that would have helped the defense team show the IRS investigation was not thorough." Lynch Br. 69–70. We review de novo the District Court's legal conclusions and review its factual findings for clear error. United States v. Ramos, 27 F.3d 65, 67 (3d Cir. 1994).

To make out a Brady claim, Lynch must show that (1) the "evidence at issue [was] favorable" to him (that is, was exculpatory or impeaching), (2) the "evidence [was] suppressed by the State, either willfully or inadvertently," and (3) he was prejudiced because the suppressed evidence was "material." Strickler v. Greene, 527 U.S. 263, 281–82 (1999); Kyles v. Whitley, 514 U.S. 419, 432–34 (1995). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result

16

of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Lynch cannot show that the SAR report was favorable or material.

All the information underlying the SAR report was disclosed to the defense, save for Bauer's own theories of the case and prosecution recommendations. Lynch's good faith defense depends on his own mental state at the time of the offenses, so Bauer's ex post views on the matter have no relevance to that determination. Nor could the report, which reflected only Bauer's recommendations, have been used as impeachment evidence, given that Bauer did not testify. A witness generally may not be impeached with another person's statement. See, e.g., 28 Wright & Gold, Fed. Prac. & Proc. Evid., § 6203 (2d ed. 2012) (collecting cases). Finally, there is no basis for Lynch's claim that the report would show that the IRS's investigation was not thorough. A defendant must "raise[] a colorable claim" that undisclosed documents created by government agents "contained exculpatory material that was material to their defense" and was not included in disclosed documents. Ramos, 27 F.3d at 71. If the IRS's investigation was sloppy, Lynch should have made this argument by reference to information contained in or left out of the underlying documents. Lynch's unsupported belief that such exculpatory material may be found in the SAR is insufficient, as "[w]e think it unwise to infer the existence of Brady material based upon speculation alone." Id. at 71. But even if the SAR report could cast doubt on the IRS's investigation, the evidence at trial supplied almost incontrovertible proof of Lynch's guilt. There is therefore no reasonable probability that an attack on the skill with which the IRS undertook the investigation would have resulted in a different outcome.

17

Lynch's final contention is that the District Court erred in concluding that the tax loss for sentencing purposes was $2,885,898, which included within it unpaid taxes from quarters for which Lynch was acquitted and not charged with any offense, and payments that were paid late. Lynch asserts that the District Court's inclusion of these sums in the tax loss violated his Due Process rights and his right to trial by jury. We disagree.

We review factual findings, such as the calculation of a tax loss, for clear error, United States v. Roman, 121 F.3d 136, 140 (3d Cir. 1997), and the District Court's interpretation of the Sentencing Guidelines, including its definition of what constitutes "loss," de novo, United States v. Fumo, 655 F.3d 288, 309 (3d Cir. 2011). "In determining the total tax loss attributable to the offense . . . all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1 cmt. n.2. Here, the District Court considered the related conduct in this case, which was Lynch's failure to pay over taxes to the IRS across multiple years, beginning prior to the quarters for which Lynch was convicted and continuing after the indictment period. This finding was amply supported by the record. Because "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence," the District Court's reliance on uncharged and acquitted conduct was appropriate. United States v. Watts, 519 U.S. 148, 157 (1997); see also, e.g., United States v. Grier, 475 F.3d 556, 567–68 (3d Cir. 2007) (en banc) ("Facts relevant to

18

application of the Guidelines — whether or not they constitute a 'separate offense'. . . do not implicate the rights to a jury trial and proof beyond a reasonable doubt.").

Lynch next argues that the tax loss should actually have been zero, given that he always intended to pay the taxes, or alternatively should have been reduced by the amount of his late payments. As we already explained, § 7202 is violated when the taxes are willfully not paid as of the time that the filing is due. The Guidelines, for their part, are clear that for willful failure-to-pay offenses, "the tax loss is the amount of tax that the taxpayer owed and did not pay" and furthermore that "[t]he tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." § 2T1.1(c)(3) & (c)(5). Accordingly, the tax loss is properly calculated based on whatever Lynch owed and willfully did not pay when the applicable filings were due, at which point the offense had been committed. Subsequent payments cannot retroactively reduce that tax loss.

Lynch's final sentencing-related challenge appears to be that the District Court's imposition of a 48 month sentence of imprisonment was substantively unreasonable because, in light of Lynch's background, the suspension of Lynch's law license as a result of his conviction was punishment enough. We review a sentence's substantive reasonableness for abuse of discretion and "must 'give due deference to the district court's determination that the § 3553(a) factors, on a whole,' justify the sentence." United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). The District Court's sentence was within the Guidelines range of 41 to 51 month of imprisonment and was supported by explicit reference to Lynch's privileged background and the § 3553(a) factors. See Rita v. United

19

<u>States</u>, 551 U.S. 338, 347 (2007) (holding that within-Guidelines sentences may be afforded a "presumption of reasonableness").  Lynch has not cited any law in support of his position that the loss of a professional license is a sufficient substitute for incarceration.  The District Court's sentence was reasonable.[6]

## VII.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[6] We have considered Lynch's remaining claims and find they are without merit and require no further discussion.